This is a petition by the defendant in a partition suit to have reopened the several orders and decrees, heretofore entered in the cause, to the end that he may be permitted to file his answer to the bill of complaint and interpose his defense to the action. On July 15th, 1946, an order was signed directing the complainant, Frances Matarrese, and her *Page 382 
successor in title, Alexander Summer Mortgage Co., to show cause why the defendant should not be granted the relief which he seeks.
Briefly, the facts which give rise to the present situation, are as follows:
On November 11th, 1919, the defendant, Paolo Matarrese, and his brother, Giacomo Matarrese, now deceased, became seized, as tenants in common, of a parcel of land in the Borough of East Paterson. On June 18th, 1921, Paolo Matarrese went to Italy, in which country he has since continued to reside. Giacomo Matarrese died on January 11th, 1943, leaving a last will and testament in and by which he devised and bequeathed his entire estate, including his one-half interest in the property in question, to his wife, the complainant, Frances Matarrese.
On April 17th, 1944, Frances Matarrese filed a bill for the partition of the real estate, naming Paolo Matarrese as the sole defendant. The only recognition, in the proceeding, of the fact that the defendant was a resident of an enemy country was the notice, given to the Alien Property Custodian, of the pendency of the action and a statement in the decree pro confesso that the defendant was a resident of an enemy country. The Alien Property Custodian filed an acceptance of the notice to appear and answer but took no other steps on behalf of the defendant. The property was ultimately ordered to be sold and was purchased by the complainant for $500 at the special master's sale. On May 23d 1945, the complainant sold the property to Alexander Summer Mortgage Company for $3,000.
The decree for sale was entered on September 14th, 1944. The order confirming sale was entered on November 17th, 1944, and the order of distribution was entered on December 19th, 1944. The petition to reopen was filed on July 15th, 1946.
It is well settled that, the time for appeal having expired when the application to reopen was made, this court is without power to grant the relief sought, unless the petitioner can bring his case within the exception of newly discovered evidence or of some special equity that would give the court *Page 383 
discretionary power to make the order granting the relief sought.Watkinson v. Watkinson, 68 N.J. Eq. 632. The question of newly discovered evidence not being involved here, the inquiry is limited to a determination as to whether there is a special equity existing which would justify the exercise of the court's discretion on behalf of this defendant.
The petition charges: (1) that the complainant failed to comply with the provisions of chapter 297 of the laws of 1942; (2) that the property produced an income of $630 and that the complainant fraudulently failed to allege this fact in the bill of complaint and also failed to disclose to the court the existence of this income, and (3) that the complainant fraudulently purchased the property for a grossly inadequate price and shortly thereafter sold it at a considerable profit.
Chapter 297 of the laws of 1942 outlines the procedure to be followed in the Court of Chancery in cases in which the defendant is a resident of an enemy country. The statute, among other things, details the steps to be taken in order to bring in the defendant; it safeguards the interest of the United States by requiring that notice be given to the Alien Property Custodian and it protects the interests of the absent defendant by requiring the appointment of a guardian ad litem as follows:
"3. Failure of defendant brought in under section one of this act to answer; appointment of guardian ad litem; procedure.
"In case the person mentioned in section one of this act, or his heirs-at-law, devisees, grantees, next-of-kin, issue, legatees, and personal representatives, or such of them as may have been made parties defendant as mentioned in section one of this act, shall not answer within the time limited in the notice prescribed in section two of this act, or further allowed by the Chancellor if he shall think proper, the Chancellor shall by his order in such suit assign and appoint a guardian ad litem for such person and for his heirs-at-law, devisees, grantees, next-of-kin, issue, legatees, and personal representatives, or such of them as may have been made parties defendant to said suit, by whom they may appear and defend such suit, and such suit may proceed in all respects as if such person, or his heirs-at-law, devisees, grantees, next-of-kin, issue, legatees, and personal representatives, or such of them as may have been made parties defendant to said suit, had been duly named and described and served in this State with process of subpoena to answer in such suit. The Chancellor may, in his discretion, appoint the Alien Property Custodian as such guardian adlitem." *Page 384 
An examination of the proceedings herein discloses that, while the provisions of chapter 297 of the laws of 1942 were, in most respects, substantially complied with, there was no guardian adlitem appointed.
The appointment of a guardian ad litem is not a formality which may be dispensed with at will. It is the method by which some measure of protection is given to the interest of the absent defendant who, through no fault of his own, is prevented from appearing and putting in his defense, or, in fact, learning of the existence of the litigation. It is fundamental that in every proceeding of a judicial nature, it is imperative that the party whose rights are to be affected should have an opportunity of making a defense. Hess v. Cole, 23 N.J. Law 116. And, where a party is for any reason incapacitated, the presence of a guardian before the court to represent such person is essential: In reMartin, 86 N.J. Eq. 265. True, the appointment of a guardian adlitem is not a jurisdictional prerequisite, and, where no injustice results from the non-appointment, the court is under no obligation to vacate its judgment. But, the motion to vacate is addressed to the sound discretion of the court, which must determine whether, under the particular facts and circumstances, justice and equity require that relief be given. LaBell v.Quasdorf, 116 N.J. Law 368.
The bill of complaint contains an allegation that the property did not produce any income. At the hearing before the master no testimony concerning income was offered. The complainant, however, gave evidence concerning the payment of taxes and assessments in the amount of $672.49. As a result, in his report, the master recommended that a lien of $336.24, being one-half of the taxes paid by the complainant, be imposed upon the share of the defendant, Paolo Matarrese.
The petition to reopen contains a charge that the property produced an income of $630, the rent received from a signboard on the premises. This charge is supported by an affidavit from an employee of the O'Mealia Poster Advertising Company. In the affidavit, the deponent asserts that the O'Mealia Company, over a period of several years, paid to the complainant and Giacomo Matarrese, her husband, the *Page 385 
sum of $630 as rent for a billboard upon the premises. Of the sum of $630, Giacomo Matarrese received $570 and the complainant was paid $60. The affidavit further states that on April 17th, 1942, the company was notified that the complainant was the new owner of the premises and, thereupon, a lease of advertising privileges for six years, at a yearly rental of $30 per year, was executed with the complainant. Under this lease the complainant received $60 for two years' rent. Thereafter, the lease was canceled because of the sale of the property.
In the answering affidavits of the complainant and her solicitor, it is admitted that the complainant received the $60 under the lease. And the affidavits do not deny the receipt of the other income. The allegation in the bill of complaint, that no income was received from the property, was untrue. Complainant's failure to make known to the court that the property was income producing while at the same time causing a lien to be impressed upon the share of the defendant for taxes paid was, in effect, a fraud upon the court. These actions highlight the non-appointment of a guardian ad litem to protect the defendant's interest, as required by the statute. Such a guardian would, in all probability, have taken steps to apprise the court of all the facts and prevented the situation which has now arisen.
To a lesser degree, the same thing may be said about the purchase of the property. The expert produced by the complainant testified that the property was worth $1,500. The complainant purchased the property at the master's sale for $500 and received a deed on January 11th, 1945. On May 23d 1945, complainant sold the property to Alexander Summer Mortgage Company for $3,000.
The statement filed by the distributing master in the partition suit shows that out of the $500 bid by the complainant at the sale, she received back the sum of $108.46. In view of the lien impressed upon the share of the defendant, he received nothing. The net result, then, of complainant's actions would appear to be that the defendant's interest was wiped out; she obtained the property for less than $400 and was enabled to make a handsome profit on its resale some four months later. *Page 386 
It may be that on a hearing, the complainant will be able to justify her actions. But, on the record as it stands, the defendant is entitled to relief. I am of the opinion that this case comes within the exception stated by the court inWatkinson v. Watkinson, supra.
A charge of laches is made against the defendant. The record discloses that the decree for sale was entered on September 14th, 1944, and the order for distribution was entered on December 19th, 1944. The defendant first received notice of the litigation on June 15th, 1945. A power of attorney was forwarded to his sister who consulted an attorney. Following an investigation and the preparation and signing of affidavits, including one from the defendant in Italy, the petition to reopen was presented to the court on July 15th, 1946.
Laches involves more than mere delay; mere lapse of time. There must be a delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances, and which has been prejudicial to the adverse party. Hinners v. Banville,114 N.J. Eq. 348. Tested by the above rule, the conduct of the defendant, especially in view of the disturbed conditions presently existing in Italy, does not, in my opinion, leave him open to a charge of laches.
Alexander Summer Mortgage Company is in a different position. It could not attack the decree in the partition suit and, conversely, is entitled to rely upon that decree. McCahill v.Equitable Life Assurance Society, 26 N.J. Eq. 531; Palmer'sExecutors v. Freeholders of Essex, 77 N.J. Law 143. I am of the opinion that the mortgage company is a bona fide purchaser for value without notice of the equities existing between the parties. As such, it is entitled to hold the property free of such equities.
I shall advise an order dismissing the petition as to the Alexander Summer Mortgage Company and reopening the decree for sale and order of distribution as against the complainant, Frances Matarrese, to the end that an accounting may be had between the defendant and the complainant as to the income from the property; the disbursements in connection therewith, and the profits realized from its resale. *Page 387