58 So.2d 527 (1952)
LE CAIN et al.
v.
BECKER et ux.
Supreme Court of Florida, Division B.
March 25, 1952.
Rehearing Denied May 23, 1952.
*528 J. Lewis Hall, Tallahassee, and Eldon L. Boyce, Miami, for appellant.
DeCostas, Maer & Floyd, Miami, for appellees.
MATHEWS, Justice.
This case involves an appeal from a final decree of a Circuit Court in Dade County dismissing the bill of complaint of the appellant in which she sought to enforce compliance with the provisions of a property settlement agreement entered into between her and the appellee, Louis J. Becker, Jr., in October, 1934.
There is little, if any, conflict in the testimony or the facts with reference to material matters. The parties were married on February 18, 1918, and lived together until September 16, 1934, at which time they separated. Prior to the separation they erected a home upon a certain lot in Miami, which was a gift from the husband's father to the husband. Prior to a separation agreement the wife lived upon the property in question and the husband had moved away. The parties entered into a property settlement agreement. As a part thereof it was agreed that the wife would leave the home in which she was then living. The material portions of the property settlement agreement read as follows:
"* * * the said Party of the Second Part does hereby covenant and agree to pay unto the Party of the First Part the sums of money hereinafter named, and upon the dates hereinafter set forth; until the first day of November, A.D. 1934, the said Party of the Second Part does hereby agree to pay unto the said Party of the First Part the sum of Fifteen Dollars ($15.00) per week, payable upon Monday of each and every week until the first Monday in November, A.D. 1934, that beginning upon the first Monday in November, A.D. 1934, the said Party of the Second Part will pay unto the Party of the First Part on Monday of each and every week the sum of Twenty Dollars ($20.00) per *529 week until the first day of April, A.D. 1935; that from the first Monday in April, A.D. 1935, the said Party of the Second Part will pay unto the said Party of the First Part the sum of Fifteen Dollars ($15.00) per week until the first Monday in November, A.D. 1935, and each and every year thereafter until the terms of this agreement shall be modified by the respective parties hereto.
"The said Party of the Second Part further agrees to and with the Party of the First Part that he will endeavor to sell that certain home place known as 2137 Northwest 36th Street, Miami, Florida, and upon the sale thereof, after paying all indebtedness due thereon, which is in the sum of Five Hundred ($500.00) Dollars together with interest, unto the father of the Party of the Second Part, such commissions, if any, taxes and prorations; that he, the said Party of the Second Part, will pay unto the Party of the First Part one-half of the net proceeds derived from the sale of the property aforesaid.
"* * * the money herein agreed to be paid shall be paid weekly during the life of this agreement, and shall continue from this date until the same shall be terminated by mutual consent of the respective parties to this agreement or until such time as the terms of said agreement may be modified by a court having jurisdiction of the parties hereto."
In 1934 the appellant here filed a divorce action against the appellee, Louis J. Becker, Jr., and obtained a final decree of divorce in January, 1935. The property settlement agreement was filed before the Master and became a part of the record in that divorce action although it was not referred to in the final decree of divorce.
The appellees here married on April 5, 1936, and have lived upon the property involved since that time as husband and wife. The appellant married Captain Le Cain on October 13, 1936, and continued to live with him until his death December 16, 1949.
It will readily be observed from reading the property settlement agreement that two questions are involved. The first with reference to the payment to the wife of certain sums of money monthly which the parties considered and treated as alimony, and the second with reference to the real estate or the home place known as 2137 Northwest 36th Street, Miami, Florida. These two questions will be treated separately as different rules of law are applicable to them.
In response to the bill of complaint the appellee pleaded that the appellant was guilty of laches and that the entire agreement had been modified and abrogated by mutual consent and is now unenforceable as against public policy. The Master found and the Chancellor entered a decree in favor of the appellees as to both questions; that is, the monthly payments treated as alimony, and the real estate.
It should be noted that the property settlement agreement provides that these monthly payments should be made "until the terms of this agreement shall be modified by the respective parties hereto", and in another place provides that the payments should be made during the life of the agreement "and shall continue from this date until the same shall be terminated by mutual consent of the respective parties to this agreement, or until such time as the terms of the said agreement may be modified by a Court having jurisdiction of the parties hereto."
The testimony before the Master is of great aid in showing the intent of the parties upon this contract as to alimony and also shows their interpretation of the contract. The appellee, Louis J. Becker, Jr., testified that he made every payment under the contract until the appellant called him in 1936 and advised him that she wished to go to North Carolina and get married and agreed with him that if he would give her $75 that all future payments would stop. He gave her the $75 pursuant to her request and agreement and never heard anything more from her about the same. This testimony is borne out by the actual facts shown by the record and testimony to the effect that the appellant did go to North Carolina and marry Captain Le Cain on *530 October 13, 1936. The appellant did not deny any of this testimony when she had an opportunity to do so in rebuttal. The Master had these parties before him and was the best judge of the evidence. He was justified in finding that the parties had mutually agreed that the monthly payments would stop upon the payment of the $75, and upon her marriage to Captain Le Cain. The appellant admits that she made no demand upon the appellee for the monthly payments until after the death of Captain Le Cain. She testified that she thought that when she married she would have no further right to these monthly payments. She lived in the same community with the appellee and although payments were not made by the appellee, she made no demand upon him for such payments. Under these facts and circumstances the record amply justified the conclusion of the Master as to these monthly payments treated as alimony provided for in the property settlement agreement; that such part of the contract had been terminated by the mutual consent of the parties; and further, that the appellant had been guilty of such laches as to bar any recovery by her of any such payments from the date of her marriage to Captain Le Cain. That part of the decree of the Chancellor denying any relief to the appellant as to such monthly payments was correct and is affirmed. See Blocker v. Ferguson, Fla., 47 So.2d 694, and Lightsey v. Lightsey, 150 Fla. 664, 8 So.2d 399.
A different question is presented with reference to the real estate or the home place. It will be noted that under the contract the obligation of the husband was to "endeavor to sell" the home place and "upon the sale thereof" would pay to the wife one-half of the net proceeds derived from the sale of the property. There is no question involved here as to rents, or a division of rents. The sole question involved is whether or not she is entitled to the one-half of the net proceeds derived from the sale of the property and how can her rights be enforced if she has any.
The divorced husband and his new wife were living in the home place; it was not decreasing in value; the appellant had remarried and was being supported by her husband until the time of his death; the appellee had not mentioned the property to her and she had not mentioned the property to him. So far as the record shows, no effort of any kind had been made to sell the property until the appellee called the appellant after the death of the appellant's husband. As shown by the record she had no reason to believe that the appellee was attempting to sell the property or defeat her right to one-half of the net proceeds should the property be sold.
The only material dispute between these parties with reference to this property is that Becker testified that he only had one conversation about the property and the appellant testified that there were two conversations. The appellee admitted that he called her, he thought in 1950, and told her he had a chance to sell the property and asked her to sign a release. He said he knew the property settlement agreement would be a cloud on the title and he got in touch with his lawyer and was advised to get a release or quitclaim deed to keep from causing a lot of trouble. Even if there was only this one conversation, it was sufficient to put the appellant on notice that the appellee was about to sell the property or desired to sell the property, and the fact that he wished her to give a release or quitclaim deed to the property, to cause her to be suspicious that he would not live up to the agreement to give her one-half of the net proceeds of the sale. There is no testimony in the record to show that the appellant at any time said or did any thing to lead the appellee to believe that the appellant had released him from his obligations contained in the property settlement agreement with reference to this real estate. The testimony with reference to the real estate is entirely different from that with reference to the monthly payments of alimony and is governed by different rules of law.
Under this property settlement agreement the wife was entitled to one-half of the net proceeds of this property when sold and her right to one-half of the *531 net proceeds would not come into being until the property was sold. When she was put on notice that the holder of the title was about to sell the property or intended to sell the property, she was justified in taking action to protect her right to receive one-half of the net proceeds. Under the facts and circumstances shown in this case she was not guilty of laches in failing to take action until she had some reason to take action. With reference to this property, the position of the parties is the same as it was on the day the agreement was signed, except by reason of the fact that the property was not sold the appellee has enjoyed the use and benefit of it throughout the years. It has increased in value and each of the parties is entitled to benefit from this increase. See Bethea v. Langford, Fla., 45 So.2d 496.
In this case there are no circumstances indicating that the appellant had abandoned or waived her rights in this real estate. Morgan v. Patillo, 5 Cir., 297 F. 140; 30 C.J.S., Equity, § 116, p. 536.
"The rule is that whether a delay in asserting one's rights constitutes laches depends on whether it was reasonable under the circumstances." Matarrese v. Matarrese, 140 N.J. Eq. 381, 54 A.2d 771; Messick v. Mohr, 292 Ill. App. 69, 10 N.E.2d 870; 30 C.J.S., Equity, § 116, p. 537.
The appellant sued as soon as she was put on notice that the appellee intended or wished to sell the property, or as soon as the occasion arose for the assertion of her rights, and under such circumstances, laches are not imputable to her. Hanchett v. Blair, 9 Cir., 100 F. 817; 30 C.J.S., Equity, § 544; 21 C.J. 219; 30 C.J.S., Equity, § 116.
Laches is a neglect to do something that by law a man is obliged or in duty bound to do. To charge him with laches, his right to sue must be complete. Anderson v. Northrop, 30 Fla. 612, 12 So. 318; Smith v. Boyd, 119 Fla. 481, 161 So. 381; Walker v. Landress, 111 Fla. 356, 149 So. 545; 30 C.J.S., Equity, § 121, p. 545; 21 C.J. 238.
In the case of Anderson v. Northrop, supra, this Court said: "In cases of continuing trusts that are strictly such, and recognized and enforced in courts of equity only, so long as the relation of trustee and cestui que trust continues to exist, no length of time will bar the cestui que trust of his rights in the subject of the trust as against the trustee, unless circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust, or unless there has been an open denial or repudiation of the trust brought home to the knowledge of the cestui que trust, which would require him to act as upon an asserted adverse title."
This rule was followed in Smith v. Boyd, supra, and Walker v. Landress, supra.
As to this property no circumstances existed to raise the presumption from lapse of time of an extinguishment of the rights of the appellant and there had been no open denial or repudiation of her rights by the appellee brought by him to her or to her knowledge which would require her to act to enforce her rights.
In view of the fact that the appellee by this record has shown a desire or intention to sell the property and to defeat the rights of the appellant in one-half of the net proceeds, and in view of the further fact that it appears from this record that the property in question has a market value somewhere between four and seventeen thousand dollars, the Chancellor should take appropriate action to protect and enforce the rights of the appellant in this property.
From this record it appears that a constructive trust now exists with reference to this property and the appellant is the cestui que trust, and the property should be sold within a reasonable time at its fair market value, and the Chancellor should make appropriate orders to accomplish this purpose and to protect the rights of the cestui que trust, that is, to receive one-half of the net proceeds from such sale. Trusts and Trustees, Bogert, Vol. 3, Part 1, Sec. 471, Page 5.
*532 The order of the Chancellor insofar as it relates to the real estate hereinabove described is reversed with directions to take further proceedings in accordance with this opinion. See Trust and Trustees, Bogert, Vol. 4, Part 2, Sections 948 and 949.
Affirmed in part and reversed in part.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.