## McCONNELL v. FIREMAN'S FUND INS. CO. OF SAN FRANCISCO, CALIFORNIA.

### No. 12934.

United States Court of Appeals Fifth Circuit.

November 18, 1949.

Rehearing Denied Jan. 17, 1950.

A. C. Wheeler, Gainesville, Ga., for appellant.

Alex W. Smith, Atlanta, Ga., R. Wilson Smith, Jr., Gainesville, Ga., for appellee.

Before HUTCHESON, HOLMES, and SIBLEY, Circuit Judges.

HOLMES, Circuit Judge.

The appellant, Mark McConnell, seeks recovery from the appellee, Fireman's

Fund Insurance Company, for loss and damage resulting from the theft of a Chevrolet automobile, which was insured by an automobile dealer's open policy against various hazards, including theft. At the conclusion of the evidence for plaintiff, defendant's counsel moved for dismissal of the action, under Rule 41(b), Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that plaintiff had shown no right to relief under the law and the facts, which motion was sustained. Judgment was entered accordingly, and the plaintiff appealed.

The policy stated that McConnell was a used-car dealer, and that the automobiles insured were to be used for purposes of sales, service, demonstration, and repair service. As a means of selling his used cars, McConnell had some of them taken to Atlanta, Georgia, for the purpose of being offered for sale at auction. On September 2, 1947, an auctioneer undertook to sell the automobile in question at public outcry, but did not succeed in doing so. When the car was not sold, it was parked in an adjacent lot by one of the hired drivers. It was the custom to park these cars nearby so as to make them available for dealers to inspect and test. Shortly thereafter, the driver who put the car in the lot was approached by a man who appeared to be a prospective buyer. The latter asked whether the car had been sold; and when told that it had not, he stated that he would like to try it. Without making any inquiries as to the identity of the man, the driver let him have the car for the purpose requested. When McConnell sought to get the keys for the car from the driver, he learned what had happened, and immediately notified the agent who had written the policy, giving him the facts; he also called the Atlanta police and reported that the car had been stolen. The car has not been seen or accounted for since that time.

In making the motion for dismissal, appellee relied on three principal grounds, which were as follows: (1) The evidence failed to disclose that the insured had title to the stolen car; (2) the evidence did not show that proofs of loss were duly filed; (3) the loss complained of fell within an exception to the coverage of the policy, because the insured voluntarily parted with possession of the car even though induced to do so by a fraudulent scheme, trick, device, or false pretense.

▮ The first two grounds are clearly without merit, since the record shows that McConnell owned the car. The mere fact that McConnell chose to keep his money in a bank in the name of Patterson Motor Company so as to enable his agent and employee to draw checks thereon did not have the effect of vesting title in such agent or employee. This car was bought and paid for with McConnell's own money, and Patterson Motor Company had no claim to it as owner.

▮ When McConnell discovered that the car had been stolen, he not only notified the police but reported the loss to the agent who wrote the policy. The latter told him the following week that the loss had been reported to the insurer. Thereafter, McConnell was visited by a man from appellee's office, who told McConnell that he was there to make adjustment for the car. They discussed the loss, and went together to the party from whom McConnell had bought the car, procuring a bill of sale for the adjuster to take back to appellee in order to effect a settlement. The fact that the insurer was told that a loss had occurred; that its local agent had reported same; that an adjuster visited McConnell, discussed the case with him, and procured a bill of sale for settlement purposes; and that the company denied liability on the policy, amounted to a waiver of the necessity for filing any further proof of loss; and the insurer is now estopped to insist on literal compliance with the terms of the policy as to proofs of loss.

▮ The serious question here is whether insured's loss was covered by the policy, or whether it came within the exception to the coverage set out by the insurer relating to "loss suffered by the insured in case he voluntarily parts with title to or possession of any automobile at his own risk." We think the insured did not vol-

untarily part with possession of the stolen car so as to bring himself within the exception to the coverage set out above. Under item 5 of the policy, the coverage of the policy was extended to automobiles where the purpose for which they were to be used was for "sales, service, demonstration, and repair service." This language was typed in a blank space as an addition to the printed form. This clearly indicates that both parties knew and agreed that the coverage should be thus extended. With the above typed portion, the insurance contract between the parties provided that the insured was covered against "loss of, or damage to, the automobile caused by theft, larceny, robbery, or pilferage," while the automobiles were being used for "sales, service, demonstration, and repair service."

The facts further show that the car was in the possession of the insured on the day of the loss, and that the attendant at the used car lot had no authority to let the prospective purchaser take the car away from the lot; but, conceding that he had such authority, he only parted with temporary custody of it; and the car remained in the insured's constructive possession while it was being demonstrated, even though the prospective purchaser was driving it alone for a contemplated short distance. The custom is shown to be that, when a car is put up for sale and bid off, the prospective buyer may then test the car by driving it himself for a very short time in order to determine whether he still wants to buy it, just as a man about to buy a horse may ride it down the road for a short distance before completing the purchase.

In Johnson v. Mutual Life Insurance Company, 154 Ga. 653, 115 S.E. 14, the Georgia court said: "Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." The insurer here knew that appellant was a used-car dealer, and it issued this policy on its dealer's form, which contemplated and covered theft of automobiles while they were being used for demonstration purposes. The demonstration of automobiles is an essential and customary method used by dealers in making sales. The court below erred in granting appellee's motion for a dismissal. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.