45 So.2d 499 (1950)
FIREMANS FUND INS. CO. OF SAN FRANCISCO, CAL.
v.
BOYD.
Supreme Court of Florida, Division A.
April 11, 1950.
D. Niel Ferguson, Ocala, and Smith, Partridge, Field, Doremus & Ringel, Atlanta, Ga., and Estes Doremus, Atlanta, Ga., for appellant.
Greene & Ayres, Ocala, for appellee.
ROBERTS, Justice.
Plaintiff-appellee filed suit in the court below to recover, under the theft provision of an insurance policy, for damage alleged to have been sustained by his trailer-truck after it had been stolen from him by his employee, one L.F. Howard. The defendant insurance company, appellant here, filed a motion for a directed verdict at the close of plaintiff's case, which motion was denied, and the case went to the jury on the evidence introduced by plaintiff and two exhibits filed in evidence by defendant, one being a statement of loss filed by plaintiff with defendant's agent, and the other, a copy of an affidavit charging Howard with embezzlement, which had been sworn out by plaintiff's attorney at the time of the alleged theft. The jury found for the plaintiff, defendant's motion for a new trial was denied, judgment for plaintiff was entered, and appeal has been perfected here from the verdict and judgment below.
The policy sued upon provided coverage, under Item D-1 - Theft (Broad Form) *500 for "Loss of or damage to the automobile caused by theft, larceny, robbery or pilferage." It specifically excluded from that coverage, however, loss or damage due to "conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance," and further provided, as a condition thereof, that "The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile."
The evidence offered by plaintiff, which was undisputed by defendant, showed that the plaintiff was in the long-distance hauling business, and in such business employed drivers to assist him on a haul or, occasionally, to make a trip alone. In July of 1945, plaintiff employed one L.F. Howard as a driver. Howard had made one trip with plaintiff and one trip alone prior to the trip during which Howard made off with plaintiff's truck. On the trip in question, Howard made the trip alone, under instructions from plaintiff to pick up a load in Miami, Florida, deliver it to Philadelphia, Pa., and to return to plaintiff's home terminal in Wildwood, Florida, with a return load if possible.
Howard picked up and delivered the load in Philadelphia, as instructed, but then the trouble began. He advised plaintiff, by wire and by telephone, that he was picking up a return load at the Terminal Service Station in New Brunswick, N.J., one of plaintiff's "contacts," and would leave there on Monday for Wauchula. This was on September 15th. On September 18th, not having heard further from Howard, plaintiff called the Terminal Service Station and was advised that Howard had been drinking and they had not loaded him. Plaintiff then tried to locate Howard in New York City and, failing in this, reported to his insurance agent that Howard had stolen the truck.
On the same day, September 18th, Howard wired plaintiff from New York, as follows: "Cancel peppers for Wauchula. Storm caused it. Bill Bedford advised no bananas for ten days. Leaving [for] Chicago now freight, loading peaches back at 110 per bushel, mailing check today." On September 22nd, Howard wired plaintiff from Chicago, as follows: "Did not leave Tommys until Wednesday night. Unloaded everything o.k. Will wire you when loaded and where to." On September 24th, plaintiff received another wire from Chicago from Howard, saying "Storming. Will load when quits. Advise you later." And finally on September 29th, Howard advised plaintiff, from Chicago, that "Sorry I made mistake. Leaving empty."
The truck and Howard were identified in Greensboro, North Carolina, on October 5th by a former driver of plaintiff's, one Robert Barrow, who knew that the truck and Howard were missing. Barrow testified that he saw Howard in a restaurant in Greensboro; that, although he had known Howard for some time (and in fact had recommended Howard to plaintiff for the job as a driver), Howard hastily left the restaurant without speaking to Barrow and without finishing his meal. The truck was found parked on the street, with the keys in it, and was later re-possessed by plaintiff. Howard was apprehended in a hotel in Greensboro, registered under an assumed name. He was returned to Florida to answer to a charge of embezzlement based on an affidavit filed by plaintiff's attorney. He has never been tried on the charge, and his whereabouts were unknown at the time of the trial.
The defendant contends, on this appeal, that the foregoing facts were insufficient to show a "theft" within the meaning of the theft provision of the insurance policy herein sued upon.
The word "theft" is not defined by our statutes, and it has been variously defined by courts of other jurisdictions in construing the "theft" provisions of insurance policies. Some courts have stated that this provision means theft as common thought and common speech would now imagine it; that it should be given the usual meaning and understanding accorded it by persons in the ordinary walks of life. Bloom v. Ohio Farmers' Ins. Co., 255 Mass. 528, 152 N.E. 345; Granger v. New Jersey Ins. *501 Co., 108 Cal. App. 290, 291 P. 698; Toms v. Hartford Fire Ins. Co., 146 Ohio St. 39, 63 N.E.2d 909; Mello v. Hamilton Fire Ins. Co., 71 R.I. 510, 47 A.2d 621.
Black's Law Dictionary, 3d Ed., 1725, defined theft as "the fraudulent taking of corporeal personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."
In 2 Bouvier's Law Dictionary, Rawle's Third Revision, page 3267, it is stated that "theft" is "a wider term than larceny and includes other forms of wrongful deprivation of the property of another."
As stated in Toms v. Hartford Fire Ins. Co., supra, [146 Ohio St. 39, 63 N.E.2d 911] "We think it may be accurately said that to `the man on the street' the word `theft' is of broader scope than `larceny' and comprehends essentially the wilful taking or appropriation of one person's property by another wrongfully and without justification and with the design to hold or make use of such property in violation of the rights of the owner. In our opinion, where the word `theft' is used in an insurance policy, without definition, it should be interpreted as liberally as possible to protect the insured."
This court is committed to the rule that a contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous. Franklin Life Ins. Co v. Tharpe, 130 Fla. 546, 178 So. 300; National Casualty Co. v. Zmijewski. 143 Fla. 285, 196 So. 587; Kimbal v. Travelers Ins. Co., 151 Fla. 786, 10 So.2d 728; Inter-Ocean Casualty Co. v. Hunt, 138 Fla. 167, 189 So. 240; New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675. And where, as here, a policy under a theft provision described as "Broad Form" provides coverage for loss or damage due to "theft, larceny, robbery, or pilferage," it requires no great liberality of construction to hold that the insurer intended to provide coverage for losses in addition to those which are, by strict common-law definition, larceny.
From the evidence adduced in the instant case, we think the jury was justified in finding facts clearly within the risk assumed in this particular policy contract. Howard unquestionably appropriated his employer's truck to his own use, contrary to his employer's express instructions, and in violation of his rights as the owner of the truck. The policy did not exclude from its coverage loss or damage due to theft by persons in the employment, service or household of the insured, although many present-day insurance contracts of the type here in question do make such exclusions.
We hold, therefore, that the evidence was sufficient to prove a "theft" of plaintiff's truck, within the meaning of the policy.
The cases cited by appellant involving the conversion of an automobile by a bailee are not here in point, as Howard was in no sense the bailee of the truck. The truck came into his custody by virtue of his employment by plaintiff as a truck driver, and he had not that possession, nor that contractual obligation with respect to the thing bailed, characteristic of a bailment. See 6 Am.Jur., Bailments, Section 3 et seq. We do not decide, therefore, since it is unnecessary, whether wrongful conversions by persons in lawful possession of an automobile under a contract of bailment (other than a bailment lease, conditional sale, etc., which as noted supra, are specifically excluded) would be covered by the policy here involved, but the exclusion of conversion and embezzlement in these designated situations indicates that there was no intent to exclude in the circumstances now present.
The remaining assignments of error argued by appellant have been carefully examined, and we find no reversible error.
Judgment affirmed.
ADAMS, C.J., and TERRELL and THOMAS, JJ., concur.