**AMERICAN INS. CO. OF NEW-ARK, N. J.**

v.

**BURSON et al.**

No. 14716.

United States Court of Appeals
Fifth Circuit.

May 31, 1954.

George J. Baya, Miami, Fla., for appellant.

S. Grover Morrow and Claude R. Jones, Miami, Fla., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

Appellee, Walter Burson, originally brought this suit in the Florida state court[1] upon two policies of insurance issued by appellant, seeking to recover the value of a used truck and trailer insured thereunder, and alleged to have been "taken from the possession of the plaintiff, insured, in such a manner as to come within the meaning of the said policies, to-wit: 'Coverage D-1-Theft (Broad Form): Loss or damage * * caused by theft, larceny, robbery or pilferage.'" In material part, the answer disputed coverage under the quoted clause, denied liability generally for failure of the insured to file timely notice and proof of loss,[2] and affirmatively defended on the basis of a further provision of the policies specifically excluding "loss due to conversion, embezzlement or secretion by any person in lawful possession * * * under a bailment lease, conditional sale, mortgage or other encumbrance."

The material facts and circumstances surrounding the loss of the vehicles reveal that appellee, Walter Burson, purchased an International Truck and Great Dane Van Trailer from Holsaple GMC Truck & Equipment Company (hereinafter called Holsaple) on April 24, 1950. The cash purchase price of the truck was $4,200.00 and the price of the trailer was $2,250.00. Upon delivery Burson made a cash payment of $1,000.-00 on the truck and $600.00 on the

trailer. The balance of the purchase price due on both vehicles was financed under conditional sales contracts assigned by Holsaple to appellee, Yellow Manufacturing Acceptance Corporation, and separate policies of insurance were issued by appellant on each of the vehicles, insuring Burson, Holsaple and the corporate appellee according to their respective interests.

Appellee Burson made only the first monthly payment on the truck, and no payments on the trailer. Because of financial difficulties and ill health, he was forced to retire from the trucking business, and offered to return the vehicles to Holsaple upon cancellation of his obligation under the conditional sales contracts. Holsaple, who had personally guaranteed Burson's monthly payments on the vehicles, suggested that Burson try to find a purchaser for them who would reimburse him for his equity, and assume payment of the balance due under said contracts.

About September 30, 1950, Burson was approached by one Paul Schirmer concerning the purchase of the vehicles. The testimony is disputed as to whether a definite agreement for sale of the vehicles was then reached, Burson stating on December 7, 1950, prior to the trial, that Schirmer was to make a $500.00 payment on the vehicles upon his return from a trial run, and that he and Schirmer "had come to a thorough understanding as to the terms of the sale." However, he testified at the trial that "there was no agreement on price, or anything like that", but that Schirmer "took the truck and he said he would be back next Saturday and we would write out a new contract if the truck proved satisfactory for his needs."[3] In any

1. Appellee, Yellow Manufacturing Acceptance Corporation intervened as party plaintiff after appellant removed the action to the federal court.

2. Pertinent policy provisions required the insured to give notice of loss "as soon as practicable to the Company", and to file a proof of loss with the Company "within sixty days after the occurrence of loss."

3. At the trial, Burson attempted to explain this apparent inconsistency in his prior testimony in part, as follows:

"Q. Is it not true that the five hundred dollar deposit which you and Mr. Holsaple requested him to make was in

event, the trial court resolved the conflicting testimony and inferences in favor of appellees, finding that "No definite terms of sale were (then) agreed upon", but that Schirmer "would make arrangements to buy the truck and trailer" upon his return from a trial trip, supposedly of about a week or ten days' duration.

Schirmer did not return with the vehicles as agreed, and, after about five weeks had elapsed since his disappearance, the alleged theft was reported to Holsaple and appellant's agent, Dodge, as well as to the local law enforcement officers. A sworn affidavit as to the loss was filed with the insurance company on December 7, 1950.

Mainly on the basis of the above outlined facts, the trial court concluded that "Paul Schirmer became a bailee of the truck and trailer on or about September 30, 1950," upon their delivery to him by Burson; that Schirmer's act "in decamping with them is a theft" within the coverage of the policies, and not within the exclusionary clause; and that the corporate appellee was entitled to judgment for the aggregate cash value of the truck and trailer as of the date of the theft, or $4,644.00, plus reasonable attorney's fees to counsel for both appellees in the total amount of $928.50.

Appellant urges that the circumstances surrounding delivery of the vehicles by appellee, Burson, to Schirmer conclusively show that, at the time of the alleged theft, title to the vehicles had passed to Schirmer and that appellees had no further insurable interest in them; alternatively, that the parties contemplated lawful possession of Schirmer as a bailee within the exclusionary clause of the policy; that appellees further failed to give notice or file proof of loss within a reasonable time after it occurred; that the court erred in refusing to admit in evidence a letter written by Schirmer to the corporate appellee on November 11, 1950 tending to show his lawful possession; and that the court, after excluding such letter as hearsay, improperly denied appellees' motion for a continuance in order to enable them to locate Schirmer and take his deposition.

Both the individual and corporate appellees attempt in separate briefs to sustain the trial court's decision, mainly on the basis of a decision by the Florida Supreme Court in Fireman's Fund Ins. Co. of San Francisco, Cal. v. Boyd, 45 So.2d 499, to the effect that the loss of the vehicles through Schirmer's acts, under the proven facts, amounted to a "theft" within the coverage of the policies. Appellees further contend that the transaction between Burson and Schirmer did not contemplate a sale of the vehicles, and passage of title thereto, but only the delivery of bare custody of the vehicles to Schirmer, with title and legal possession retained by Burson; that the evidence supports the trial court's finding that the corporate appellee's general denial of liability constituted a waiver of the insured's failure promptly to notify the defendant of the loss; that the trial court properly excluded the Schirmer letter as hearsay and self-serving; and, finally, that the court did not abuse its discretion in refusing near the end of the trial to grant

connection with the purchase of the truck? A. Yes, on the purchase of the truck when he come back with the truck, if it produced, if it was up to his expectations, if it would do the work.

"Q. Look at this statement again. A. I have read it. I looked at it.

"Q. You state in here, 'We had come to a thorough understanding as to the terms of the sale—'. What were the terms of the sale that you and Mr. Holsaple and Mr. Schirmer came to a thorough understanding about? A. He was to take over the truck on his return and put up five hundred dollars on the truck.

"Q. Before he left? A. After he come back.

"Q. What was to be done with the five hundred dollars when he came back? A. It was to be applied on the purchase price of the truck, the tractor and trailer."

appellees a continuance in order to obtain Schirmer's testimony.

■■ We think the testimony fairly supports a finding of substantial compliance with the policy provision requiring notice of the loss "as soon as practicable to the Company". Burson testified that he reported the loss to appellant's agent, Dodge, in late October or early November, 1950, approximately four or five weeks after Schirmer left with the vehicles; and his testimony is corroborated in part by Holsaple who stated that he met with Burson and Dodge in early November, 1950, to discuss the claim. Until about the second week of October, 1950, we agree with appellees that it was reasonable for Burson to assume that, because of a mechanical failure of the equipment, delay in loading or unloading, or illness, etc., Schirmer was unable to return as agreed, but was still retaining possession of the equipment in good faith. The affidavit verifying the loss was prepared by and submitted to appellant's agent, Dodge, on December 7, which date, it might be reasonably argued, was within the 60 day policy period for filing proof of loss. However this may be, and though the testimony convinces us that appellant had actual knowledge of the loss within a reasonable time, nevertheless, in view of further testimony by Dodge that appellant denied liability for the loss on the ground that it was "an embezzlement instead of a theft", we think the record fairly supports the trial court's conclusion that "the general denial of liability by the defendant * * constituted a waiver of any failure on the part of the plaintiff to promptly notify the defendant of the loss, * * or to file a proper proof of loss." See Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813, 815; Daniel v. Fireman's Fund Ins. Co., 5 Cir., 46 F.2d 784, 785.

■ In the Boyd case, supra, in construing virtually identical policy provisions to those here involved as covering a taking somewhat similar to that claimed by appellees, the court held:

"The word 'theft' is not defined by our statutes, and it has been variously defined by courts of other jurisdictions in construing the 'theft' provisions of insurance policies. Some courts have stated that this provision means theft as common thought and common speech would now imagine it; that it should be given the usual meaning and understanding accorded it by persons in the ordinary walks of life. (Citing cases.)

\* \* \* \* \* \*

"As stated in Toms v. Hartford Fire Ins. Co., supra, (146 Ohio St. 39, 63 N.E.2d [909] 911) 'We think it may be accurately said that to "the man on the street" the word "theft" is of broader scope than "larceny" and comprehends essentially the wilful taking or appropriation of one person's property by another wrongfully and without justification and with the design to hold or make use of such property in violation of the rights of the owner. In our opinion, where the word "theft" is used in an insurance policy, without definition, it should be interpreted as liberally as possible to protect the insured.'

"This court is committed to the rule that a contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous. (Citing additional cases.) And where, as here, a policy under a theft provision described as 'Broad Form' provides coverage for loss or damage due to 'theft, larceny, robbery, or pilferage,' it requires no great liberality of construction to hold that the insurer intended to provide coverage for losses in addition to those which are, by strict common-law definition, larceny.

\* \* \* \* \* \*

"We hold, therefore, that the evidence was sufficient to prove a 'theft' of plaintiff's truck, within the meaning of the policy." Fireman's Fund Ins. Co. of San Francisco v. Boyd, supra, 45 So.2d at pages 500–501.

Appellant insists that the Boyd case, supra, is factually distinguishable on the grounds that the alleged "theft" was there committed by a servant or employee who had mere custody, rather than lawful possession of the vehicle, within the rule recognized by this Court in McConnell v. Fireman's Fund Ins. Co., 5 Cir., 178 F.2d 76, 78. See also, Fireman's Fund Ins. Co. of San Francisco v. McConnell, 5 Cir., 198 F.2d 401. However, in view of the broad definition of theft adhered to by the Court in the Boyd case, supra, and the rules there set forth, we think that the evidence and reasonable inferences therefrom presented questions of fact for the decision of the Trial Court in determining whether a "theft" actually occurred, and, if so, whether the quoted exclusionary clause of the policy was applicable.

■ As bearing upon those issues, we cannot escape the conclusion that the Trial Court committed reversible error in refusing to admit in evidence and consider the effect of Schirmer's letter to the corporate appellee, dated November 11, 1950. Schirmer's wife testified without contradiction that the letter was in her husband's handwriting, and she was not cross-examined as to this testimony, nor was the genuineness of the letter otherwise disputed. Considered alone and without any rebutting evidence, the letter strongly tends to

refute any inference of Schirmer's felonious intent arising from his disappearance and prolonged retention of the vehicles without any payment therefor, which acts on his part are the only evidence, circumstantial or otherwise, presently tending to support the trial court's conclusion that a theft actually occurred. Upon remand and another trial, we assume that, if Schirmer is still unavailable as a witness, his assertions of good faith in the letter may possibly be rebutted by other testimony that they were made to forestall or prevent prosecution, and that he had no intention of paying for the vehicles or returning with them. Of course, the resolving of all such conflicting testimony and inferences therefrom, if ultimately developed, is for the Trial Court. Under the present meager record, we merely hold that the letter was not objectionable as self-serving or hearsay, but was clearly admissible as res gestae in explanation of Schirmer's intent in taking and retaining possession of the vehicles.[4] See State Assur. Underwriters of Provident Fire Ins. Co. v. Miller, Fla., 58 So.2d 532, 534; Cohn & Goldberg Lumber Co. v. Robbins, 159 Ala. 289, 48 So. 853; Indemnity Co. of America v. Slade, Tex.Civ.App., 4 S. W.2d 649; Jones Commentaries on Evidence, 2d Ed., Vol. 3, p. 2247, Sec. 1223; 31 C.J.S., Evidence, §§ 250, 247.

■ In view of our holding that the court erred in excluding said letter, we consider it unnecessary to pass upon the remaining questions of whether the court abused its discretion in denying appellee's motion for continuance in order to take Schirmer's deposition, and the alleged inadequacy of the Trial Court's award of attorney's fees,[5] since

4. Indeed, the decision in the Boyd case, supra, on which appellees most strongly rely, at least inferentially recognizes the rule admitting such testimony by the court's consideration, apparently without objection, of four telegrams sent by the employee Howard to his employer tending to reveal that his prolonged absence and retention of the truck was in good faith and without any intent to steal or convert it. 45 So.2d at page 500.

5. For the benefit of counsel, however, we note that the testimony as to the reasonableness of the attorney's fees was not made a part of the record on appeal, and we cannot, of course, take judicial knowledge of the adequacy of any given award under the Florida Statute, Florida Statutes Annotated, § 625.08.

these issues may not arise upon another trial.

The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.