ERVIN, Judge.
Appellants appeal from a final summary judgment in favor of appellee State Farm Mutual Automobile Insurance Company (State Farm), which held that certain policies issued by State Farm excluded coverage for appellants’ losses caused by theft. We reverse and remand for further consistent proceedings.
State Farm issued auto insurance policies, effective in 1982, to appellant Anthony Sumner for a 1978 Pontiac Firebird, and to appellant Louis Pridgen for a 1978 Chevrolet Camaro. Both policies contain “Coverage D”, providing comprehensive coverage for loss to the vehicle except loss by collision, which is not in excess of the deductible amount, including loss caused by theft or larceny. The policies, however, also contain an exclusionary clause, stating:
THERE IS NO COVERAGE FOR:
* * * * * *
3. LOSS TO ANY VEHICLE DUE TO:

*838 d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY PERSON WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL OR SALES AGREEMENT.
(emphasis in original)
Appellee William S. Royall, III, worked as an auto salesman for Bill Terry’s Incorporated, from June to October of 1982. In August 1982, Royall entered into an oral agreement with Pridgen whereby Pridgen agreed to transfer both possession and title of his 1978 Camaro to Royall for the purpose of resale; the proceeds therefrom to be applied to a down payment on a new car Pridgen intended to buy. Pridgen also orally agreed that Sumner would deliver possession and title of his 1978 Firebird to Royall for Royall to sell, with the amount received therefrom to be applied against the down payment of a car that Pridgen wished to purchase. Pridgen additionally agreed to convey to Sumner his 1978 Buick.
Royall never performed his part of the agreements, and eventually sold the 1978 Camaro and 1978 Firebird, using the proceeds from the sales to pay his own debts. Royall later wrote three personal checks to Pridgen, but they were returned for insufficient funds. Based on these two transactions, Royall pled guilty and was adjudicated guilty in January 1983 of two counts of grand theft, pursuant to Section 812.014, Florida Statutes.
Pridgen and Sumner made demand on their insurer, State Farm, which refused to pay the claims, citing the exceptions to the risk in the exclusionary clause. In November 1983, appellants filed an action against appellees for damages arising out of the above transactions.[1] In June 1984, State Farm filed a motion for summary judgment,[2] asserting that the policies in question excluded coverage as to situations where an automobile is voluntarily transferred under a sales agreement and a conversion occurs.
When asked in a deposition about his intent when he received the vehicles, Royall answered:
My intent was to take the money from the Pridgens’ vehicle, along with this other $3,000 that he gave me, and use part of that money or none of it, and let me go borrow some money from somebody else to take him down to the auction. I didn’t intend to steal Mr. Pridgen’s money, when I did. I intended it after I realized it was gone, yes. But I didn’t start out to do that.
Despite Royall’s disavowals of what he initially intended to do with the vehicles, there was evidence from which a jury could have concluded the contrary. In addition to evidence regarding Royall’s adjudications of guilt for grand theft, there was evidence disclosing that at the time of the transfers in question, Royall had for several years preceding the thefts in this case fraudulently acquired numerous vehicles in a similar manner as he had obtained those in the case at bar.
The summary judgment in favor of State Farm states that appellants “voluntarily delivered their vehicles to Mr. Royall for resale and he thereafter sold the same and converted the money to his own use.” Since the losses were due to a “conversion”, the trial court concluded that State Farm’s policies excluded coverage for the losses.
At issue on appeal is whether the trial court properly decided by summary judgment that the policies’ exclusions, as set out above, bar coverage of the losses appellants sustained. We consider that the lower court’s construction of the word “conversion” fails to recognize that conversion, as applied to the facts at bar, is included within Florida’s Anti-Fencing Act (Sections 812.012-812.037, Florida Statutes) as one means of carrying out theft, and it is uncertain from the words used in the exclu *839 sionary clause whether they pertain to a taking which is accomplished by fraudulent inducements.
At the outset it must be acknowledged that there is a division among the authorities regarding an insured’s right to recover from his insurer for loss caused by theft in cases where a vehicle’s delivery is accomplished by facts such as those at bar. Some cases hold there is no coverage if the wrongdoer fraudulently induces the injured party to surrender to him, not simply the possession or custody of the property, but the title as well. St. Paul Fire and Marine Insurance Co. v. Veal, 377 So.2d 962 (Ala.1979); Fiske v. Niagara Fire Insurance Co., 207 Cal. 355, 278 P. 861 (1929); Boggs v. Motors Insurance Co., 139 A.2d 733, 734 (D.C.1958); Great American Indemnity Co. v. Yoder, 131 A.2d 401, 403 (D.C.1957); Milburn v. Federated Mutual Implement and Hardware Insurance Co., 349 P.2d 644 (Okla.1960); see also Annot., 48 A.L.R.2d 8, 72-85 (1956). There is, on the other hand, a contrary line of cases, holding that there can never be any legal sale of an automobile because the taker’s fraud vitiates the entire transaction, and unless the policy specifically excludes the taking by fraudulent means, the insured is entitled to recover. See, e.g., Massachusetts Fire and Marine Insurance Co. v. Cagle, 214 Ark. 189, 214 S.W.2d 909 (1948); Reserve Insurance Co. v. Interurban Transit Lines, 105 Ga.App. 278, 124 S.E.2d 498 (1962); Great American Insurance Co. v. Gusman, 80 Ga.App. 471, 56 S.E.2d 319 (Ga.Ct.App.1949); Phaholyothin v. State Farm Mutual Automobile Insurance Co., 104 Ill.App.3d 322, 60 Ill.Dec. 73, 432 N.E.2d 972 (Ill.App.Ct.1982); Edwards v. State Farm Mutual Automobile Insurance Co., 296 N.W.2d 804 (Iowa 1980); Modern Sounds & Systems, Inc. v. Federated Mutual Insurance Co., 200 Neb. 46, 262 N.W.2d 183 (1978).
We consider that the latter approach is more consistent with that followed by the Florida Supreme Court in Firemans Fund Insurance Co. v. Boyd, 45 So.2d 499 (Fla.1950), wherein the court, in construing a clause providing for the loss or damage to an automobile caused by theft, larceny, robbery or pilferage, stated that the word theft should be given the usual understanding accorded it by persons in the ordinary walks of life, and that it comprehends
essentially the wilful taking or appropriation of one person’s property by another wrongfully and without justification and with the design to hold or make use of such property in violation of the rights of the owner. In our opinion, where the word “theft” is used in an insurance policy, without definition, it should be interpreted as liberally as possible to protect the insured.
45 So.2d at 501 (quoting Toms v. Hartford Fire Insurance Co., 146 Ohio St. 39, 63 N.E.2d 909, 911 (1945)). The above definition of theft, applied by Boyd before the adoption of the Anti-Fencing Act in 1977, is clearly consistent with the later adopted act. Section 812.014(l)(a) & (b), Florida Statutes, broadly states:
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
(emphasis supplied.) Section 812.012(2)(c) and (d)l. defines “obtains or uses” as
(c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
(d)l Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception;....
(emphasis supplied.)
As stated, the theft of the two automobiles was accomplished by means of Ro-yall’s fraudulent or willful misrepresentation of a future act; therefore, the conversion clearly fits within both the statutory *840 and the Boyd court’s definition of theft. Because the insurance policies before us do not define theft, we similarly place a broad construction upon that term.
We turn next to the exclusionary clause, excluding from coverage loss to a vehicle due to “conversion ... by any person who has the vehicle due to any lien, rental or sales agreement.” (emphasis in original) It is a long standing rule that if there is any ambiguity in the exclusionary provisions as they apply to the given facts, those provisions must be construed in favor of the insured and against the insurer who chose the language in drafting the policy. Firemans Fund Insurance Co. v. Boyd; Collins v. Royal Globe Insurance Co., 368 So.2d 941 (Fla. 4th DCA 1979). Can it be said that the above words are free from ambiguity and clearly exclude loss caused by a situation wherein one, by false pretenses, is entrusted by the owner with both possession and title to an automobile for the purpose of sale? We think not.
Because the statutory definition of theft clearly includes a conversion such as that before us, we conclude that the above words of exclusion are ambiguous in that it is uncertain whether they apply to situations wherein a sales agreement is the result of the would-be purchaser’s fraudulent inducements, or to situations in which a vehicle is first legally obtained and then is later converted by the intended buyer.[3] The facts in the ease at bar are remarkably similar to those in Great American Insurance Company v. Gusman, wherein the policy of insurance provided coverage for loss or damage caused by theft, robbery or pilferage, but excluded coverage for loss due to “conversion, or embezzlement by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance.” There the insured was induced to part with possession of her automobile under the belief that the person so inducing her had a prospective purchaser for it and would act as her agent in the sale. The person gave to the insured a forged check drawn on a non-existent account. The insured and the taker agreed that the insured would hold the check until the sale was completed and the money deposited in the bank, and that the insured would not deliver the bill of sale until completion of the sale. In holding that a jury issue existed, the court construed the exclusionary clause to apply only to one who had “some interest in the property.” 56 S.E.2d at 320 (e.s.). The interest in the vehicle which the taker was required to obtain before the words of exclusion could be applied to bar an insured from recovery was a valid property interest because the words “lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance”, without further limitation, clearly implied the existence of such interest. Accord Reserve Insurance Co. v. Interurban Transit Lines, 105 Ga.App. 278, 280-281, 124 S.E.2d 498 (1962) (possession was not gained pursuant to any of the conditions stated in the exclusionary clause in that “the original taking was unlawful and constituted a theft or larceny ..., and the alleged thief thereby acquired no interest in the automobile under the forged instrument.” (emphasis supplied)).
Admittedly, in both the above two cases, only possession of the vehicles was placed in the persons receiving the vehicles, not title. This, however, is not a significant distinction. The rationale applied in Gus-man and Interurban has also been employed in other cases to allow recovery to *841 insureds where title to the vehicle was also conveyed. See Massachusetts Fire & Marine Insurance Co. v. Cagle (taker’s possession never lawful, but obtained by fraudulent trickery commensurate with larceny); Edwards v. State Farm Mutual Automobile Insurance Co. (words of exclusion, i.e., “conditional sale, purchase agreement, mortgage or other encumbrance” connote possession in a car by one party while the other retains an interest in it evidenced by either title or some sort of lien or encumbrance); Phaholyothin v. State Farm Mutual Automobile Insurance Co. (while transfer of automobile was a conversion, it was not a conversion by one obtaining “the vehicle due to any lien, rental or sales agreement”, as required by the exclusion, because the conversion constituted a theft under the Illinois statutes). In the case before us, the conversion was a theft under the Florida Statutes, and, since a thief cannot be considered to have obtained any interest in the vehicles pursuant to a lien, rental or sales agreement, the jury could also decide that the exclusionary clause is inapplicable to the facts at bar. Cf. Collins v. Royal Globe Insurance Co., 368 So.2d 941, 943 (Fla. 4th DCA 1979) (“A thief acquires no lawful possession and if he was a thief from the start then his possession was unlawful from the start.”).
We conclude therefore that the words in the exclusionary clause are not so clear as to require resolution in favor of the insurer by summary judgment. If the insurer had wished to exclude transactions such as the one before us from coverage, it could have done so unambiguously by placing language in the policies, similar to that used by the insurer in Baxter Motors Inc. v. Iowa Hardware Mutual Insurance Co., 15 Ill.App.2d 524, 526, 146 N.E.2d 797 (1958), excluding loss resulting from “any fraudulent scheme, trick, device, false pretense _”
Finally, we have considered Paris v. State Farm Mutual Automobile Insurance Co., 365 So.2d 439 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla.1979). Although superficially Paris is distinguishable from the facts before us in that the policy of insurance before the Paris court provided coverage generally for loss, without as here specifying theft, we consider that the rule announced therein is in conflict with the result reached by us here. The clause of exclusion in Paris was very similar to that before us by excluding “loss due to conversion, embezzlement or secretion by any person in possession of the owned motor vehicle under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance.” Id. at 440. There the court affirmed the directed verdict in favor of the insurer, finding that the insured “was not deceived by the transaction, but knowingly and voluntarily gave possession of the vehicle, the keys, and the certificate of title” to the salesman pursuant to the agreement. Id. We understand Paris to say that regardless of whether the insured was deceived as to the true nature of the transaction, he was not deceived about the fact of title immediately passing to the intended purchaser, therefore the clause of exclusion operates to bar coverage. We cannot agree with this reasoning. Paris seems to follow, without specifically citing, case law authority holding that if one voluntarily parts with both possession and title of his vehicle, such person cannot recover from his insurer, regardless of whether the taker obtained the vehicle by fraudulent means. This holding we consider to be clearly contrary to the broad construction placed upon theft, when otherwise undefined in the policy, by Boyd, and with the language used in the Florida criminal statutes proscribing theft.
To summarize: Coverage D in the policy before us provides broadly for coverage caused by loss to an insured’s ear, including theft or larceny. The exclusion from coverage of “[l]oss to any vehicle due to ... conversion ... by any person who has the vehicle due to any ... sales agreement” is ambiguous, (emphasis in original) A conversion, as observed, can occur by criminal or noncriminal means. If the conversion was not accompanied by a felonious intent at the time of the taking, it is non *842 criminal. We cannot glean from the above words, particularly when the terms “theft” or “larceny” are used without restriction in the policy, whether the insurer intended to exclude from coverage any conversion in situations where a vehicle is obtained by a person pursuant to a lien, rental or sales agreement, or whether the exclusion refers only to noncriminal conversion. In the absence of additional language specifying the intent of the insurer, we regard the words used in the exclusionary clause to be ambiguous.
Reversed and remanded for further proceedings.
WENTWORTH and ZEHMER, JJ., concur.

. On May 3, 1984, the Clerk of the Circuit Court, in and for Duval County, entered default against appellee Royall, "for failure to serve or file any paper as required by law.”

. Bill Terry’s Inc. also filed a motion for summary judgment which appellants did not oppose.

. In saying the above, we are in strong disagreement with National Union Insurance Co. v. Carib Aviation, 759 F.2d 873, 877 (11th Cir.1985), which, in construing an exclusionary clause similar to that before us, concluded from its review of Florida’s Anti-Fencing Act that the word "conversion” as used in the clause referred to both civil and criminal conversion. The court apparently did not consider that the felonious intent necessary to convict for theft still has to exist at the time of the taking — regardless of whether its classification may have been formerly labeled larceny, conversion, embezzlement, etc. See Adams v. State, 443 So.2d 1003, 1006 (Fla. 2d DCA 1983). Thus, in our view, the distinction between civil and criminal conversion, when the term conversion is used in an insurance policy without limitation, remains viable.