498 So.2d 1245 (1986)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Louis G. PRIDGEN, et al., Respondents.
No. 68124.
Supreme Court of Florida.
November 26, 1986.
*1246 Harris Brown, Michael J. Obringer and Robert B. Guild of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for petitioner.
Joseph M. Ripley, Jr. of Joseph M. Ripley, Jr., P.A., Jacksonville, for respondents.
EHRLICH, Justice.
We have for review Pridgen v. Bill Terry's, Inc., 478 So.2d 837 (Fla. 1st DCA 1985), which conflicts with Paris v. State Farm Mutual Automobile Insurance Co., 365 So.2d 439 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
This case involves an exclusionary clause to the "comprehensive" loss provisions of an automobile insurance policy. The exclusion excepts from coverage loss to the vehicle occurring under certain specified circumstances. The Pridgens' 1978 Chevrolet Camaro and the Sumners' 1978 Pontiac Firebird were insured under policies issued by petitioner, State Farm Mutual Automobile Insurance Company. Both policies contained "Coverage D," providing comprehensive coverage for loss to the vehicle, including loss caused by theft or larceny. The policies also contained an exclusion from coverage for "LOSS TO ANY VEHICLE DUE TO ... CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY PERSON WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL OR SALES AGREEMENT."
In August of 1982, respondent Pridgen entered into an oral agreement with William S. Royall, III, an automobile salesman for Bill Terry's, Inc., whereby Pridgen *1247 agreed to transfer both possession and title of his 1978 Camaro to Royall for the purpose of resale. Proceeds were to be applied to the down payment on a new car which Pridgen intended to purchase from Bill Terry's. As part of the oral agreement, Pridgen agreed that respondent Sumner would deliver possession and title of his 1978 Firebird to Royall for the purpose of resale, proceeds of which were also to be applied to Pridgen's down payment.
After the automobiles were delivered to Royall, he sold the two vehicles. However, rather than applying the proceeds to the down payment, as agreed, he used the proceeds from the sales to pay his own debts. Royall later wrote Pridgen three personal checks, all of which were returned for insufficient funds. Based on the foregoing, Royall was charged with two counts of grand theft, pursuant to section 812.014, Florida Statutes (Supp. 1982). After entering a plea of guilty, Royall was adjudicated guilty as charged in January of 1983.
Pridgen and Sumner made demand on State Farm under their respective policies. State Farm refused to pay the claims, citing the exceptions contained in the exclusionary clause. In November of 1983, the respondents filed suit against State Farm, Bill Terry's, Inc. and Royall.[1] State Farm filed a motion for summary judgment, asserting that coverage was excluded in situations where an automobile is voluntarily transferred under a "sales agreement"[2] and a conversion occurs. Accepting State Farm's position, the trial court entered final summary judgment in favor of State Farm. The trial court reasoned that because respondents "voluntarily delivered their vehicles to Mr. Royall for resale and he thereafter sold the same and converted the money to his own use" the loss sustained by the respondents was "due to a conversion" and was thus "excluded by the policies" in question.
On appeal, the district court reversed, finding the exclusionary clause ambiguous, "in that it is uncertain whether [it applies] to situations wherein a sales agreement is the result of the would-be purchaser's fraudulent inducements, or to situations in which a vehicle is first legally obtained and then is later converted by the intended buyer." 478 So.2d at 840. The district court construed the "ambiguous" clause, in favor of the respondents, to apply only in the latter situation. The court reasoned that because there was some evidence in the record from which it could be concluded that Royall initially intended to convert the vehicles, thus gaining possession and title of the vehicles through false inducement, summary judgment was improperly granted.
The district court correctly concluded and State Farm concedes that the conversion of the vehicles by Royall resulted in a loss due to "theft"[3] under the *1248 policies which is covered unless otherwise expressly excluded. Once it is established that a loss falls within the comprehensive coverage of an automobile insurance policy, it is the insurer who has the burden to prove that the loss arose from a cause which is excepted under the policy. See Hudson v. Prudential Property & Casualty Insurance Co., 450 So.2d 565, 568 (Fla. 2d DCA 1984); see also National Union Fire Insurance Co. v. Carib Aviation, Inc., 759 F.2d 873, 875 (11th Cir.1985).
As the the district court noted, exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id. (citations omitted).
The district court's conclusion that the exclusionary clause was ambiguous hinged on the fact that a conversion, as occurred in this case, is included within Florida's Anti-Fencing Act, sections 812.012-812.037, Florida Statutes, as one means of carrying out "theft" and the exclusion does not make clear whether it pertains to a taking which is accomplished by fraudulent inducement. 478 So.2d at 838-39. We agree with the district court that State Farm "could have" drafted this exclusion with more precision. See, e.g., Baxter Motors, Inc. v. Iowa Hardware Mutual Insurance Co., 15 Ill. App.2d 524, 146 N.E.2d 797 (1958) (exclusionary clause expressly excepted from coverage "[l]oss resulting from the Insured voluntarily parting with title and possession of any automobile, if induced so to do by any fraudulent scheme, trick, device, false pretense"). However, the mere fact that a provision in an insurance policy could be more clearly drafted does not necessarily mean that the provision is otherwise inconsistent, uncertain or ambiguous. We cannot agree with the district court's conclusion that the exclusionary clause in question is ambiguous. Accord, Phaholyothin v. State Farm Mutual Automobile Insurance Co., 104 Ill. App.3d 322, 60 Ill.Dec. 73, 432 N.E.2d 972 (1982) (identical exclusionary language found unambiguous, although under state law conversion "by deception" was a "theft"). By its plain meaning the clause excludes from coverage "any loss" which results from "conversion, embezzlement or secretion by any person who has the vehicle due to a lien, rental or sales agreement." (Capitalization omitted.)
We do not find the distinction drawn by the district court between "civil" and "criminal" conversion persuasive under the facts of this case.[4] If the term "conversion" were used in a vacuum it might be unclear whether the conversion which occurred in this case is excepted from coverage. However, the term "conversion" is used in connection with the words "embezzlement" and "secretion." The term "embezzlement" is defined as "willfully to take, or convert to one's own use, another's money or property, of which the wrongdoer acquired possession lawfully." Black's Law Dictionary 468-69 (5th ed. 1979). To "secret" means to "deposit or conceal in a hiding place ... to appropriate secretly." Webster's New Collegiate Dictionary 1036 (1981). Thus, both of these terms suggest a criminal intent to appropriate the property *1249 of another for one's own use. See National Casualty Company v. General Motors Acceptance Corp., 161 So.2d 848 (Fla. 1st DCA 1964). Moreover, both would be considered a "theft" under the broad definition given that term in the Florida Anti-Fencing Act. We, therefore, have little problem concluding that "conversion" as used in this policy clearly refers to the type of conversion which occurred in the instant case.
Under the subject exclusion it matters not whether Royall intended to convert the vehicles at the time he entered into the agreement with Pridgen or whether he first came into lawful possession of the vehicles and then formed the felonious intent. Both scenarios would constitute a conversion within the terms of the exclusion. The exclusionary clause at issue contains no requirement of "lawful possession," as read into the clause by the district court. The clause in question refers only to one who "has" the vehicle, not to one who is "entrusted" with or is in "lawful possession" of the vehicle. See National Union Fire Insurance Co., 759 F.2d at 876-77 (where no requirement of lawful possession or entrustment is contained in exclusion, such requirement should not be read into policy); Compare Collins v. Royal Globe Insurance Co., 368 So.2d 941 (Fla. 4th DCA 1979) (thief never acquired "lawful possession" of motor home where loss due to conversion, embezzlement or secretion by any person in lawful possession of the vehicle is excluded from coverage); Security Insurance Co. v. Investors Diversified Ltd., 407 So.2d 314, 315-16 (Fla. 4th DCA 1981) (larceny by trick not excepted from coverage by exclusion excepting "[l]oss ... caused by or resulting from misappropriation, secretion, conversion, infidelity, or any dishonest act on the part of ... any person... to whom the property may be entrusted."). Thus, we agree with State Farm that the lawful or unlawful nature of the possession of the vehicle converted is irrelevant in determining whether the loss sustained in this case is excepted from coverage.
Accordingly, we quash the decision below and remand for proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, SHAW and BARKETT, JJ., concur.
NOTES
[1] In May of 1984 a default was entered against Royall "for failure to serve or file any paper as required by law." In June of 1984, Bill Terry's, Inc. filed a motion for summary judgment which was not opposed by the respondents.
[2] It appears that the issue of whether the transaction between Pridgen and Royall is properly characterized as a "sales agreement," as that term is generally understood, was not raised before either the trial or district courts. In their complaint the respondents alleged "defendants BILL TERRY'S and ROYALL entered into an oral purchase and sale agreement with plaintiff's (sic) PRIDGENS and SUMMNERS." Because this characterization has not been challenged we do not address the issue.
[3] In a case such as this, where the term "theft" is used in an insurance policy, without definition, it will be interpreted liberally in favor of the insured. Firemans Fund Insurance Co. v. Boyd, 45 So.2d 499 (Fla. 1950). Further, as noted by the district court the conversion which occurred in this case, is a "theft" as that term is broadly defined under Florida's Anti-Fencing Act. Section 812.014(1)(a) & (b), Florida Statutes states:

(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
Section 812.012(2)(c) and (d) 1. defines "obtains or uses" as:
(c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
(d) 1. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; ..."
[4] Exclusionary language such as this has been construed to apply to both civil and criminal conversion. See National Union Fire Ins. Co. v. Carib Aviation, Inc., 759 F.2d 873 (11th Cir.1985). However, in the instant case, we need not consider whether the exclusion applies in situations where there exists no felonious intent to convert (civil conversion), because Royall clearly possessed such intent at the time he converted the vehicles.