706 So.2d 319 (1997)
STATE COMPREHENSIVE HEALTH ASSOCIATION, Florida Comprehensive Health Association and Mutual of Omaha Insurance Company, Appellants,
v.
Gerri A. CARMICHAEL, as Personal Representative of the Estate of James Osborne Carmichael, Appellee.
No. 96-3058.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
R. Fred Lewis of Kuvin Lewis Restani & Stettin, P.A., Miami, for Appellants-Florida Comprehensive Health Association and Mutual of Omaha Insurance Company.
Roy W. Jordan, Jr. of Roy W. Jordan, Jr., P.A., West Palm Beach, for appellee.
PARIENTE, BARBARA J., Associate Judge.
At issue in this appeal is the effect of a health insurance policy exclusion, excluding coverage for "any expense for which benefits are payable under another policy of health insurance, Medicare, or other governmental program." After a non-jury trial, the trial court entered a final judgment against appellants (defendants), finding that the unpaid medical expenses incurred by appellee's deceased husband (Carmichael) were not excluded from coverage. We affirm.
Prior to his death in 1988, Carmichael incurred medical expenses resulting from his treatment for leukemia. At that time, Carmichael had health insurance coverage under a policy issued through State Comprehensive Health Association ("State Comprehensive") and administered by Mutual of Omaha Insurance Company (Mutual).[1] This policy was *320 first issued in 1985 and subsequently renewed.
The parties stipulated that Carmichael's medical expenses were covered under the health insurance policy, that the expenses were timely submitted for payment and that Carmichael otherwise complied with all conditions precedent. In fact, the trial court found that some payments were made under this policy.
Carmichael's widow filed suit against defendants seeking to recover $37,943.31 in unpaid medical expenses, which had been timely submitted to Mutual as the administering insurer for the State Comprehensive policy.[2] At trial, defendants claimed that they were not obligated to pay the medical expense because of the existence of other insurance through Carmichael's former employer.
Prior to his illness, Carmichael was employed by Best Buy Drugs which had a self-funded employee benefit plan ("Best Buy plan") that, according to the trial court's findings, provided "some benefits for health expenses." Carmichael's health providers also submitted his medical expenses to the Best Buy plan.
Although the Best Buy plan paid some of his expenses, there was testimony at trial and findings made by the trial court that many expenses were not paid by the Best Buy plan due to financial difficulties and lack of funding. Best Buy Drugs filed for bankruptcy several years prior to trial. The parties stipulated that the bankruptcy "would have included the employer contributions" for the Best Buy plan for employee health benefits.
The trial court found that defendants were placed on notice of the failure of the Best Buy plan to make payment and of the plan's insolvency as early as January, 1989, but failed to take any steps to ascertain the details of the plan or why the plan failed to make payment. Defendants never produced the Best Buy plan nor did it offer any testimony at trial as to the terms of the plan.
The medical expenses would be covered by the State Comprehensive policy, but for the asserted exclusion. Once Carmichael established that the medical expenses qualified for coverage under the policy, the burden shifted to defendants to prove that the expenses were not covered by virtue of a policy exclusion. See B & S Assocs., Inc. v. Indemnity Cas. & Property, Ltd., 641 So.2d 436, 437 (Fla. 4th DCA 1994).
The State Comprehensive health insurance policy contained an exclusion from coverage for "any expense for which benefits are payable under another policy of health care insurance, Medicare, or other governmental program." State Comprehensive claimed that the Best Buy plan constituted another policy of health care insurance under which benefits were payable.[3]
In determining whether defendants met this burden, the trial court properly applied the principle, governing construction of insurance contracts, that ambiguities in policies are to be strictly construed against the insurer. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828 (Fla.1997); Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993). In addition, exclusionary clauses are to be construed even more strictly than coverage clauses. See Purrelli v. State Farm Fire & Cas., 698 So.2d 618, 620 (Fla. 2d DCA 1997); Triano v. State Farm Mut. Auto. Ins. Co., 565 So.2d 748, 749 (Fla. 3d DCA 1990); Allstate Ins. Co. v. Shofner, 573 So.2d 47, 49 (Fla. 1st DCA 1990); see also State Farm v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986).
Here, the term "policy of health care insurance" is not defined in the policy. When an insurer fails to define a term in a policy, as it failed to in this case, the insurer cannot take the position that there should be *321 a "narrow, restrictive interpretation of the coverage provided." Budget Rent-A-Car Sys., Inc. v. Government Employees Ins. Co., 698 So.2d 608, 609 (Fla. 4th DCA 1997) (citing National Merchandise Co., Inc. v. United Serv. Auto. Ass'n, 400 So.2d 526, 530 (Fla. 1st DCA 1981)); see also Pridgen, 498 So.2d at 1247 n. 3. In other contexts, self-insurance has not been considered a policy of insurance. See Lipof v. Florida Power & Light, Co., 558 So.2d 1067, 1068 (Fla. 4th DCA 1990), approved, 596 So.2d 1005 (Fla.1992).
Defendants assert that in defining health insurance for the purpose of the policy, we should refer to the statutory definition of that same term. Despite defendant's claim to the contrary, the Best Buy plan would not clearly fall within the applicable statutory definition of health insurance. See § 627.6482(4), Fla. Stat. (1987).[4]
State Comprehensive, as the drafter of the exclusion, had the ability to define "policy of health insurance" and to specifically include employee benefit plans within that definition. The fact that State Comprehensive was created by statute as a non-profit legal entity does not change the analysis. State Comprehensive failed to define the term within the policy and the policy exclusion refers only to "another policy of health care insurance, Medicare, or other governmental program."
As an alternative basis for its final judgment, the trial court found that, at the time the medical expenses were incurred, the Best Buy plan was insolvent and therefore the benefits were not "payable" under this plan. Defendants stipulated that the insolvency of another insurer at the time the bills were incurred would render the State Comprehensive policy primary.
Defendants argue that the trial court's finding of insolvency is not supported by substantial competent evidence. However, it was defendants' burden to prove that coverage was excluded. As to this issue, we cannot state that the trial court's findings were clearly erroneous or against the manifest weight of the evidence. See Sladek v. Lambertus, 667 So.2d 417 (Fla. 4th DCA 1996); Southern Bell Tel. & Tel. Co. v. Markham, 632 So.2d 272 (Fla. 4th DCA 1994); Oceanic Int'l Corp. v. Lantana Boatyard, 402 So.2d 507 (Fla. 4th DCA 1981).
Finally, we note that defendants' brief raises the applicability of the policy exclusion as the sole point on appeal. However, on pages 31 and 32 of their brief, defendants argue that final judgment was improperly entered against Mutual, the administrating insurer.
"[I]n order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly, concisely, and separately as points on appeal." Singer v. Borbua, 497 So.2d 279, 281 (Fla. 3d DCA 1986), and cases cited therein; see F.M.W. Properties, Inc. v. Peoples First Fin. Sav. & Loan Ass'n, 606 So.2d 372, 376 (Fla. 1st DCA 1992) (failure to organize arguments under cogent and distinct issues on appeal presents sufficient reason for an appellate court to decline consideration of a matter); see also Fla. R.App. P. 9.210(b) (1997). We therefore decline to decide the propriety of Mutual's separate liability.
Were we to consider this issue on the merits, we would nevertheless affirm because servicing agents, like Mutual, that issue policies, collect premiums, and act as service representatives can be insurers. See Continental Janitorial Corp. v. Nationwide Underwriters, Inc., 368 So.2d 112 (Fla. 4th DCA 1979). In addition, the trial court's judgment could have also been predicated on plaintiff's claim of negligence by Mutual in the administration of the policy.
We conclude that the trial court did not err by construing the exclusion strictly against defendants, finding that the exclusion did not operate to deny coverage for Carmichael's *322 unreimbursed medical expenses and in entering judgment against all defendants.
AFFIRMED.
WARNER and KLEIN, JJ., concur.
NOTES
[1] State Comprehensive is a nonprofit legal association consisting of all the health insurers writing insurance in Florida, who are required by statute, as a condition of doing business, to be members of this insurance association See § 627.6488(1) Fla. Stat. (1987). The name was changed from State Comprehensive to Florida Comprehensive Health Association in 1991. See § 627.6488 (1991). The parties stipulated that Florida Comprehensive would be responsible for any breach of State Comprehensive's insurance policy.
[2] The bulk of the medical expenses represented hospital bill for Shands Hospital, Bethesda Memorial Hospital and JFK Hospital.
[3] Carmichael claimed that this specific coverage defense was not raised when the claim was denied and was only belatedly raised years later after suit was filed for payment of the expenses. Carmichael raised, but the trial court never determined, the issues of waiver and estoppel.
[4] In 1987, the time period during which the bills were incurred by Carmichael, subsection 627.6482(4) defined health insurance as "any hospital and medical expense incurred policy or nonprofit health care services plan contract, whether sold as an individual or group policy." The current definition of health insurance in subsection 627.6482(6), Florida Statutes (1995), is significantly altered from the 1987 version but the definition still does not include self-funded employee benefit plans.