W. LYNG v. BUGBEE DISTRIBUTING COMPANY.

182 So. 801.
Opinion Filed July 13, 1938.

420

*George P. Garrett* and *Lawrence Rogers,* for Plaintiff in Error;

*W. J. Steed* and *Arthur L. Steed,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment of the Circuit Court in favor of the defendant in a suit wherein the plaintiff claimed the sum of $719.15, the difference between the contract price of potatoes sold by plaintiff to the defendant and the down payment of $500.00 made by the defendant to the plaintiff on delivery of the potatoes.

Jury was waived and the case was tried before the Judge.

The Judge made findings of fact as follows:

"*Finding No. 1:* The Court finds that, while it may be that Captain William Lyng was of the opinion that he had sold his potatoes to the Bugbee Distributing Company pursuant to an agreement made in Kissimmee, Florida, on April 18, 1935, whereby the Bugbee Distributing Company quoted to Captain Lyng $2.05 per bushel crate for No. 1 potatoes and $1.70 per bushel crate for No. 2 potatoes, Mr. Barstow, representing the Bugbee Distributing Company, and Mr. Brocklehurst did not so understand.

"According to the testimony potatoes are not purchased cash on barrel head and Barstow thought he was handling the Lyng potatoes according to the custom which is quoted price at the market subject to grade, pack and quality. Therefore, there was no meeting of the minds between Captain Lyng and the Bugbee Distributing Company, and hence no contract of sale.'

"*Finding No. 2:* The Court finds that since there was no contract of sale between the parties and since the Bugbee Distributing Company actually received and accepted the

potatoes, the Bugbee Distributing Company is responsible to Captain Lyng, the plaintiff, for the reasonable value of the potatoes so received and accepted by the Bugbee Distributing Company.

"*Finding No. 3:* The Court finds that the reasonable value of the potatoes belonging to Captain Lyng, and received and accepted by the Bugbee Distributing Company, as established by the evidence, is the net receipts for the potatoes received by Bugbee Distributing Company from Chester Franzell & Company, after deducting the cost of transportation and handling, which net receipts were evidenced by the check Chester Franzell & Company sent to the Bugbee Distributing Company dated May 4th, 1935, in the amount of $496.00.

*Finding No. 4:* On the basis of the foregoing findings, the Court finds for the Defendant."

We, having considered the entire record, reach the conclusion that Bugbee Distributing Company, through its agent and representative, purchased from Lyng a certain lot of potatoes for and at the agreed price of $2.05 per bushel crate for No. 1 potatoes and $1.70 per bushel crate for No. 2 potatoes, less $40.00 to be retained out of purchase price by Bugbee Distributing Company, f. o. b. cars Kissimmee, Florida, and paid cash on the purchase $500.00; and that the aggregate amount to be paid was to be determined by the number of bushels of No. 1 potatoes and the number of bushels of No. 2 potatoes as checked and graded at destination.

We further find that according to the accounts sales and by the testimony, "the car contained by actual unloading check 319 crates of No. Ones and 356 crates of No. Twos."

The finding by the Judge, "According to the testimony potatoes are not purchased cash on barrel head and Barstow thought he was handling the Lyng potatoes according to

the custom which is quoted price at the market subject to grade, pack and quality. Therefore, there was no meeting of the minds between Captain Lyng and the Bugbee Distributing Company and hence no contract of sale," we hold, injected an element into this case which has no place here. The record shows clearly that Bugbee Distributing Company's agent and representative definitely contracted and agreed with Lyng that Bugbee Distributing Company would pay Lyng for the potatoes $2.05 for No. Ones and $1.70 for No. Twos, f. o. b. Kissimmee, but as the potatoes had been loaded in the car the agent and representative of Bugbee Distributing Company could not accurately determine the number of crates of No. 1 potatoes and the number of No. 2 potatoes contained in the car and this item was necessarily left to be determined by the check at destination.

In Stokes, *et al.*, v. Victory Land Company, 99 Fla. 795, 128 Sou. 408, Mr. Justice ELLIS, speaking for the Court, said:

"The intention of the parties to a contract is to be deduced from the language employed by them. The terms of the contract, when unambiguous, are conclusive in the absence of averment and proof of mistake, the question being not what intention existed in the minds of the parties, but what intention is expressed by the language used. Continental Casualty Co. v. Bows, 72 Fla. 17, 72 So. R. 278; Atlanta & St. A. B. R. Co. v. Thomas, 60 Fla. 412, 53 So. R. 510."

The record does not show that the item of $40.00 to be retained by Bugbee Distributing Company was mentioned at the time of the sale, but, as the declaration appears to concede this item, and as it was customary for the Bugbee Distributing Company to deduct such amount on each car of potatoes handled by it, there is justification for the allowance of that sum to be deducted. Lyng was not bound

by what Mr. Barstow, who was President and Manager of Bugbee Distributing Company, may have thought Bugbee Distributing Company was undertaking in this transaction, but Mr. Barstow and Bugbee Distributing Company are bound by the contract made by it by the agent of Bugbee Distributing Company with Lyng as to the purchase of the carload of potatoes and in that contract, so far as the record shows there was no mention of the price to be paid by Bugbee Distributing Company to Lyng being influenced or controlled by the amount which might be realized for the carload of potatoes in the market to which Bugbee Distributing Company should determine to ship and sell the potatoes.

The bill of lading shows that the potatoes were shipped from Kissimmee, Florida, by W. Lyng, to Bugbee Distributing Company, Jacksonville, Florida, and the record shows that the shipment was diverted to Pittsburgh by Bugbee Distributing Company.

We must hold that the court below committed error in assuming that there was no meeting of the minds of the parties on the contract price of the potatoes and that the court committed further error in applying the sales price in the market to which Bugbee Distributing Company shipped the potatoes instead of applying the contract price at Kissimmee, Florida.

For the reasons stated, the judgment must be reversed and the cause remanded for a new trial.

So ordered.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD and CHAPMAN, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—When all the evidence, both for plaintiff and defendant, is considered, such evidence, as

I understand and construe it, was in such conflict on material issues that the findings of fact, as made by the Circuit Judge, had a reasonable basis in the evidence, and should be sustained, and the judgment affirmed.