371 So.2d 690 (1979)
Rosetta DRISDOM, As the Mother and Natural Guardian of Tangela Williams, a Minor, Appellant,
v.
GUARANTEE TRUST LIFE INSURANCE COMPANY, Appellee.
No. 78-52.
District Court of Appeal of Florida, Third District.
June 5, 1979.
*691 Mark J. Feldman, Miami, for appellant.
Carey, Dwyer, Cole, Selwood & Bernard and Steven R. Berger, Miami, for appellee.
Before HENDRY and CHARLES CARROLL (Ret.) and TYSON, ROBERT W., Jr., Associate Judges.
TYSON, ROBERT W., JR., Associate Judge.
Rosetta Drisdom, plaintiff below and natural mother of Tangela Williams, appeals from a final judgment entered upon a directed verdict in favor of the appellee, Guarantee Trust Life Insurance Company. As a result of the final judgment, appellant was precluded from recovering under a policy of insurance issued by the appellee.
The sole issue on appeal involves whether the trial court was correct in ruling, as a matter of law, that no coverage was afforded the appellant under the applicable policy of insurance. We hold that the appellant presented a prima facie case in favor of coverage and that the trial court erred in directing a verdict for the insurer.
The material facts are not in dispute: Eleven-year old Tangela Williams broke her hip participating in a track event conducted by the YMCA while she was attending its after-school program. The accident occurred in the elementary school playground located across the street from the "Y" building. Although not otherwise connected with the YMCA, this playground was the regular site of various recreational activities sponsored by the YMCA, including softball and track. The playground had been used by the YMCA for its outdoor activities for a number of years prior to Tangela's accident. All playground events were under the supervision of YMCA counselors and were a regular part of the after-school program.
As a result of these injuries, Tangela's mother, the appellant herein, incurred medical expenses exceeding $6,000. When she applied for insurance benefits with the Guarantee Trust Life Insurance Company to cover her medical expenses, the insurer denied her application on the ground that her claim did not fall within the scope of the policy. The policy in question was a group insurance policy issued by Guarantee Life to the YMCA covering certain losses caused by accidents to students (and others) in the YMCA program.
Appellant then filed this suit against the insurer for the medical expenses she incurred as a result of her daughter's accident. She contended that the policy applied to the accident and that she was entitled to recover up to the maximum limits of the policy (i.e., $5,000). Guarantee Trust denied that the policy applied to Tangela's accident.
The issue of insurance coverage eventually was tried before a jury. At the conclusion of the trial, the jury returned a verdict in favor of the appellant in the amount of $4,000. However, the trial court reserved ruling on the appellee's motion for a directed verdict and later directed a verdict in its favor. Final judgment was entered pursuant to the directed verdict and this appeal followed.
Guarantee Trust Life Insurance Company issued to the YMCA an insurance policy which insured students enrolled in its after-school program, including Tangela Williams, for certain medical expenses, not to exceed $5,000, caused by an accident while the insured was "attending school during the hours and on the days when school is in regular session." The policy defined school as "the actual individual school in which the Insured attends classes or is employed."
*692 Appellee contends that Tangela could recover under the policy only if she had been injured within the confines of the "Y" building or the surrounding property under its control. Since she was injured in an elementary school playground located across the street from the "Y" building, she was not in the actual individual school at the time of the accident, and therefore was not covered by the policy. We cannot agree.
The undisputed facts clearly show that Tangela attended the YMCA after-school program during its regular sessions; that is, she was at "school"[1] during the hours and on the day when the program was in regular session. The YMCA as an integral part of its program, routinely and regularly took the students and walked them across the street to the playground. A variety of sports activities took place on the playground under YMCA auspices, including the track race in which Tangela was injured.
We believe that the term "school" is not defined in the policy in such a way as to effectively preclude recovery in this instance. The "actual individual school" is susceptible to at least two different interpretations: (a) it could mean the physical structure in which the YMCA program is housed, i.e., the "Y" building; or (b) it could mean the school activities sponsored by the YMCA and conducted under its auspices as part of its regular program. This latter meaning could include those activities taking place in a nearby park regularly used as a continuing part of the after-school program.
Our conclusion is supported by the fact that the insurer could easily have defined "school" in such a way as to eliminate any possibility of ambiguity. "School" could have been defined as the property on which the physical structure housing the program was located. We note in this regard that the appellee did restrictively define "residence" as "the property on which the home, dwelling place, or residence is located."
Clearly, had the playground been a part of the YMCA property, the appellant could recover under the policy. We cannot say that the policy thereby excluded recovery simply because the YMCA chose to conduct its track program across the street, rather than on its own property.
Appellee further contends that the YMCA could have included within the policy a clause which would cover students who were "participating in or attending an activity exclusively organized, sponsored and solely supervised by the school and school employees, including travel directly to or from such an activity in a vehicle furnished by the school and supervised solely by school employees." Appellee's position is that the YMCA chose not to obtain this expanded coverage which would have authorized recovery in this instance. Since this provision was expressly deleted from the policy, appellee contends that Tangela's injury was not covered under the effective policy.
We cannot agree that this provision would necessarily have covered the accident here even if it had been included within the policy. It is apparent to us that this deleted clause was designed to cover other activities outside the scope of our present concern. It would cover field trips and other extracurricular activities not included within the everyday routine conducted by the YMCA. The track race in which Tangela was injured was an everyday routine activity and, therefore, did not fall within the ambit of the deleted clause.
When an ambiguity exists in an insurance policy, any uncertainty must be construed against the insurer and in favor of the insured. See e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla. 1975); Hartnett v. Southern Ins. Co., 181 So.2d 524 (Fla. 1965); American Manufacturers Mut. *693 Ins. Co. v. Horn, 353 So.2d 565 (Fla.3d DCA 1977), cert. denied, 366 So.2d 885 (Fla. 1978).
It is generally for the court and not for the jury to determine the extent of coverage under an insurance policy. State Farm Fire & Casualty v. Lichtman, 227 So.2d 309 (Fla. 3d DCA 1969); United Services Automobile Association v. Porras, 214 So.2d 749 (Fla. 3d DCA 1968). The jury must resolve whether the insured's loss falls within the terms of the policy. State Farm Fire & Casualty v. Lichtman, supra. Particularly where there is a latent ambiguity in the policy as distinguished from a patent ambiguity,[2] extrinsic evidence such as parol evidence is permissible to explain such ambiguities. Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976); City of St. Petersburg v. International Assoc. of Firefighters, 317 So.2d 788 (Fla. 2d DCA 1975).
During the trial below, parol evidence was admitted which indicated that the YMCA fully intended that it would be covered for accidents of this nature. The insurance agent who sold the policy to the YMCA testified that he understood the policy to cover children participating in outdoor activities sponsored by the YMCA on the elementary school playground. We approve of the trial court's action in admitting this evidence where there was at least a latent ambiguity in the policy concerning whether Tangela Williams was attending "school" at the time of her injury.[3]
Our view of the entire record convinces us that the appellant presented sufficient evidence to sustain a jury verdict in her favor. It was, therefore, error for the trial judge to direct a verdict for the appellee.
This case is returned to the trial court with directions to reinstate the jury verdict, enter final judgment for the appellant on the verdict and for such other proceedings as are deemed necessary.
Reversed and remanded.
NOTES
[1] No one disputes that the after-school program itself is covered by the policy and that appellant would have recovered had Tangela been injured upon YMCA property. The policy is apparently a standard one widely used to insure public and private school employees and students. For our purposes, the YMCA after-school program is included within the policy meaning of "school".
[2] A latent ambiguity has been defined as an ambiguity where the language employed in the policy is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings. A patent ambiguity is that which appears on the face of the instrument and arises from the defective, obscure or insensible language used. Ace Electric Supply Co. v. Terra Nova Electric, 288 So.2d 544 (Fla. 1st DCA 1973).
[3] We have given the appellee the benefit of the doubt by classifying the ambiguity herein as latent. The term "school" is obscurely defined on the face of the policy.