PER CURIAM.
The defendants below, Jones & Scully, Inc. [JSI] and others, appeal from a final judgment entered in favor of the plaintiff below, Lawrence J. O’Connell [O’Connell], and from an order denying their post-trial motions. We affirm in part, and reverse in part.
On August 29, 1983, JSI hired O’Connell as its Director of Sales. O’Connell’s employment contract consisted of three letters between O'Connell and Robert M. Scully, Jr. [Scully] on behalf of JSI. The second letter, written'by O’Connell, suggested a “bonus” plan of “15% of incremental operating income achieved over and above results for fiscal year 1983.” The third letter, written by Scully, indicated that Scully agreed with the proposed “bonus” plan.
On December 31, 1985' JSI sold the business. The sale included all inventories, customer lists, trade names, goodwill, and licenses.
In September, 1986, O’Connell brought suit for breach of the employment contract. The main issue at trial became whether the proceeds from the sale of the business were to be included in calculating the “incremental operating income” for fiscal year 1986.
The trial court found that the contract term “incremental operating income” was ambiguous and, therefore, admitted parol evidence to explain the meaning of the term.- The jury found that JSI had breached the employment contract and awarded O’Connell damages of $30,000.00 for fiscal year 1984, $30,000.00 for fiscal year 1985, and $335,550.00 for fiscal year 1986. Thereafter, the defendants filed post-trial motions arguing, in part, that the term “incremental operating income” was not ambiguous and that, as a matter of law, O’Connell was not entitled to participate in any proceeds from the sale of the business. The defendants’ post-trial motions were denied. Thereafter, final judgment was entered. The defendants below appeal.
The defendants contend that the term “incremental operating income” is unambiguous and that, as a matter of law, the proceeds from the sale of a business are not included in operating income. We agree.
We find that the term “incremental operating income” is unambiguous, and therefore, the trial court erred in admitting par-ol evidence to explain the meaning of the term.
In construing unambiguous contractual provisions, it is fundamental under Florida law that the best evidence of the intention of the parties is reflected by the actual contract terms used and, thus, the plain meaning of those terms is controlling. Lyng v. Bugbee Distributing Co., 133 Fla. 419, 182 So. 801 (1938); Fecteau v. Southeast Bank, N.A., 585 *869 So.2d 1005 (Fla. 4th DCA 1991); Acceleration National Service Corp. v. Brickell Financial Services Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA), review denied, 548 So.2d 662 (Fla.1989); Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA), review denied, 484 So.2d 10 (Fla.1986); Bared v. Cobo, 379 So.2d 666 (Fla. 3d DCA), certiorari denied, 388 So.2d 1111 (Fla.1980).
Akers v. Canas, 601 So.2d 305 (Fla. 3d DCA 1992).
In accordance with the ordinary meaning of the term and with the intentions of the parties, as drawn from the entire instrument, it is clear that the meaning of the term “incremental operating income” as used in the present employment contract does not include the proceeds from the sale of the business. Operating income has been defined as “the excess of the revenue of a business enterprise over the expenses pertaining thereto, excluding income derived from sources other than its regular activities and before income deductions.” Eric L. Kohler, A Dictionary for Accountants 290 (1952). See also, Leroy F. Im-dieke & Ralph E. Smith, Financial Accounting 32, 33, 49, 50 (1st ed. 1987); Cro-well’s Dictionary of Business and Finance 261 (1923).
Moreover, it is clear from the contract that the proceeds from the sale of the business were not to be included as a basis for O’Connell’s bonus. In O’Connell’s first letter to Scully, he outlined his bonus and equity option program. O’Connell wrote, “My goal is to achieve a 20% ownership of the business in three years.... Hopefully, the percentage and the growth we project (a doubling of the business during the three year period) will match up to produce the necessary credit to purchase the optioned shares.” Clearly, O’Connell intended to increase the sales of an “on-going” business when he accepted employment as Director of Sales. O’Connell never intended nor anticipated the sale of the business. Therefore, he could not intend nor anticipate a bonus based on the proceeds from the sale of the business.
Accordingly, under the circumstances, we reverse the portion of the final judgment which awarded O’Connell $335,550.00 for fiscal year 1986, and affirm the remaining portions of the final judgment.[1]
Affirmed in part, reversed in part.

. We affirm the portions of the final judgment which award O'Connell $30,000.00 for fiscal year 1984 and $30,000.00 for fiscal year 1985 based on Scully’s admissions at trial.