678 So.2d 397 (1996)
STATE FARM FIRE & CASUALTY INSURANCE CO., Appellant,
v.
DENI ASSOCIATES OF FLORIDA, INC., Appellee.
FLORIDA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,
v.
E.C. FOGG, III, Lisabeth A. Fogg, Elizabeth Fogg Lane, and John Roger Clark, individually and as partners d/b/a Land-O-Sun Groves, Appellees.
Nos. 94-2354, 94-2580.
District Court of Appeal of Florida, Fourth District.
July 17, 1996.
Denied on grant of rehearing August 20, 1996.
Clarification Denied October 9, 1996.
*398 Elizabeth K. Russo and Kimberly L. Boldt of Russo & Talisman, P.A., Coconut Grove, and Green, Haverman & Ackerman, P.A., Fort Lauderdale, for appellant State Farm Fire & Casualty Ins. Co.
Scott A. Mager and Anthony K. Goodman of Mager & Associates, and Walter G. Campbell, Jr., of Krupnick, Campbell, Roselli, & Malone, Fort Lauderdale, for appellee Deni Associates of Florida, Inc.
*399 Bonita L. Kneeland and Tracy A. Raffles of Fowler, White, Gillen, Boggs, Villareal, & Banker, P.A., Tampa, for appellant Florida Farm Bureau Mutual Ins. Co.
Beverly D. Eisenstadt and Cromwell A. Anderson of Fowler, White, Burnett, Hurley, Banick & Stickroot, P.A., Miami, for appellees Fogg, Fogg, Lane and Clark.
Appellee denied attorney fees on grant of rehearing August 20, 1996.

EN BANC
FARMER, Judge.
In these unrelated appeals, we have decided on our own motion to grant review en banc and resolve them together. We face the identical issue in each casenamely, whether a blanket exclusion of coverage for bodily injury caused by pollution in a comprehensive general liability policy is ambiguous. We conclude that it is not and consequently reverse for appropriate judgments in each of these cases.
In the State Farm appeal, the dispute centers around an accidental contamination of the interior atmosphere of an office building. Deni & Associates [the insured], an architectural firm, was moving its office equipment into new offices within the building when ammonia from a blueprint machine accidentally spilled. The fire department removed carpeting, broke a window to ventilate the interior atmosphere, and ordered the building evacuated until the air was safe to breathe. Nearly six hours later, the building was deemed safe for occupancy. When personal injury claims were made against the firm, Deni & Associates sought coverage from its liability carrier. State Farm ultimately denied coverage, and the trial court disagreed in a summary judgment with that denial.
In the Florida Farm Bureau case, defendants Foggs, Lane and Clark (the insured) own and operate a citrus grove in Palm Beach County. They hired an outside contractor to spray an insecticide (Ethion) on their grove from a helicopter. While spraying the grove, the contractor also sprayed two men who were standing on adjacent property. The men sued the insured for damages, claiming they had suffered bodily injuries from the insecticide. The insured in turn made a claim to their liability carrier, Florida Farm Bureau, for coverage and a defense. Florida Farm Bureau denied coverage, and thus the suit and appeal.
In both cases, the policy is a comprehensive general liability policy (CGL), a kind of policy widely purchased by businesses in the state of Florida. The CGL carriers based their denials of coverage on a policy exclusion that we shall label a "pollution exclusion," which is substantively identical in both policies. The clauses categorically exclude coverage for personal injuries caused by the "discharge, dispersal, release or escape of pollutants." In turn, they expressly define the term pollution as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."
In the summary judgment in the State Farm case, the trial judge reasoned that "pollution clauses appear to contemplate long-term environmental degradation or, at the very least, an environment-wide exposure to extremely hazardous or toxic substances." He also noted that most of the lately published decisions involved pollution exclusion clauses containing an exception for claims arising from "sudden and accidental" discharges, citing Claussen v. Aetna Cas. & Sur. Co., 865 F.2d 1217 (11th Cir.1989). He found that State Farm's broad definition of pollution had "stretch[ed] the definition of `pollutant' beyond what a reasonable person placed in the position of the insured would have understood the word to mean." [e.s.] Deeming the categorical exclusion in this case ambiguous, he applied the rule that ambiguities are resolved in favor of coverage.
In the Florida Farm Bureau summary judgment finding coverage, the trial judge also found the exclusion ambiguous. Relying on a trial court opinion from Kansas, he stated that the policy definition of pollution is unclear because "a broad reading of `irritant or contaminant' as being any substance that might cause injury or bother would include virtually every substance in existence."[1] *400 He observed that "milk is an irritant to persons allergic to it" and reasoned that the broadness of the definition "would swallow the coverage of the policy." Citing the principle that exclusions from coverage are narrowly construed, he rejected the policy's own definition of the term pollution and construed the term to mean "a substance particularly harmful or toxic to persons or the environment generally, and not merely a substance harmful to persons or the environment due to special circumstances." He added that this construction was "consistent with the purpose behind the pollution exclusion, which is to exclude from coverage injuries resulting from pollution or contamination of the environment, be it land, water or the atmosphere." Finding the policy ambiguous, the trial judge construed the exclusion in favor of the insured and found coverage.
We first note that the pollution exclusion used in CGL policies in Florida was recently before the supreme court in Dimmitt Chevrolet Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700 (Fla.1994). The text of the clause addressed in that case was different from the ones we address today in that the Dimmitt clause allowed coverage when the "discharge, dispersal, release or escape [of pollutants] is sudden and accidental." [e.s.] 636 So.2d at 702. We stress that there is no such exception in the present exclusion. Nevertheless, we cannot avoid noting that the court did not find the clause ambiguous even with that exception. The question we confront is whether the clause becomes ambiguous when the exception is removed.
None of the words used in the policy texts we have quoted above are highly technical; all are simple words of ordinary use. The fact that the words together combine to completely eliminate an entire area of potential coverage does not render them unclear. We find but one message in these exclusions, and it is apparent: no personal injury claims resulting from the discharge, dispersal, release or escape of liquid irritants or chemicals are covered. Because we find the clause unambiguous, we are unable to agree with the trial courts' construction of this categorical exclusion of pollution coverage in the summary judgments.
An insurance policy is a contract between the insured and the carrier. We thus apply the principle, followed in Florida, known as the "objective" theory of contractual intent:
"The rule is probably best expressed by the late Justice Holmes in `The Path of the Law,' 10 Harvard Law Review 457, where it was stated in part that `The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs not on the parties having meant the same thing but on their having said the same thing.'" [e.s.]
Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957). Hence, the meaning of a contract is deduced from the unambiguous language employed by the parties. Lyng v. Bugbee Dist. Co., 133 Fla. 419, 182 So. 801 (1938). It is thus foreign to our law to find the meaning of contractual language from the subjective understanding of one of the parties, as the trial judge did in the State Farm case.
In Rigel v. National Casualty Co., 76 So.2d 285 (Fla.1954), the court described the basic rules for construction of insurance policies thus:
"We acknowledge the rules that if the language is plain and unambiguous, there is no occasion for the Court to construe it,... that if uncertainty is present, the instrument should be construed against the insurer, ... that the Court should not extend strictness in construction to the point of adding a meaning to language that is clear, ... and that the Court should construe the contract of insurance to give effect to the intent of the parties, ...." [c.o.; e.s.]
76 So.2d at 286; see also National Auto. Ins. Ass'n v. Brumit, 98 So.2d 330 (Fla.1957) (provisions of policy limiting or avoiding liability construed most liberally in favor of insured and strictly against insurer). More recently, in State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245 (Fla.1986), the court further explained:

*401 "As the district court noted, exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979). However, `[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.' Id. (citations omitted)." [e.s.]
498 So.2d at 1248. Even more recently, in Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla.1993), the court summarized these principles as follows:
"Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9-10 (Fla.1957); see also, e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla.1975); Poole v. Travelers Ins. Co., 130 Fla. 806, 814, 179 So. 138, 141 (1937)." [e.s.]
622 So.2d at 470.
The third district applied these principles in U.S. Fire Ins. Co. v. Morejon, 338 So.2d 223 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 426 (Fla.1977), in the following passage:
"A court may resort to construction of a contract of insurance only when the language of the policy in its ordinary meaning is indefinite, ambiguous or equivocal. If the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations. In the absence of ambiguity, waiver or estoppel, contravention of public policy or positive law, it is the function of the court to give effect to and enforce the contract as it is written...
"Florida courts adhere to the principle that a court should not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract." [e.s.]
338 So.2d at 225.
Thus, the current Florida rule is that strict construction is required of exclusionary clauses in insurance contracts only in the sense that the insurer is required to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage. If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written.
Strict construction does not mean that a court must always find coverage. Strict construction does not mean, as the foregoing cases establish, that clear words may be tortured into uncertainty so that new meanings can be added. Where the insurer has defined a term used in the policy in clear, simple, non-technical language, as is the case with pollution in these policies, strict construction does not mean that judges are empowered to give the defined term a different meaning deemed more socially responsible or desirable to the insured.
Outside of Florida, however, there is now a rule of construction for insurance policies known as the "doctrine of reasonable expectations, whereby the court upholds the insured's expectations as to the scope of coverage, provided that the expectations are objectively reasonable." See 2 COUCH ON INSURANCE 3d § 22:11, n. 87 (and cases cited therein). This new doctrine should not be confused with the traditional rule followed in Florida which requires that policy language be read as it would be understood by reasonable people, i.e. given its plain and ordinary meaning. See United States Fire Ins. Co. v. Pruess, 394 So.2d 468 (Fla. 4th DCA 1981), and General Acc. Fire & Life Assur. Corp. v. Liberty Mut. Ins. Co., 260 So.2d *402 249 (Fla. 4th DCA 1972). The new doctrine involves a determination as to whether the insured's subjective expectations are reasonable. In contrast, the Florida rule involves an analysis of what any reasonable person would have understood from the actual language of the policy. Foremost Ins. Co. v. Putzier, 102 Idaho 138, 627 P.2d 317 (1981).
This new doctrine of reasonable expectations is based on the notion that insurance policies are essentially contracts of adhesion. 2 COUCH ON INSURANCE 3d § 22:11. As explained in COUCH:
"The genesis of [the doctrine] is the judicial recognition that most insurance contracts, rather than being the result of anything resembling equal bargaining between the parties are truly contracts of adhesion in which many insureds face two options: (1) accept the standard insurance policy offered by the insurer, or (2) go without insurance. The [doctrine] essentially state[s] (1) that an insured's reasonable expectations upon reading the policy should guide construction, and (2) that policy provisions (primarily exclusions) should not be construed to reach a result that is unconscionable."
Id.[2] As COUCH itself demonstrates, this new doctrine has never been embraced by the Florida Supreme Court.[3] COUCH also makes clear that the doctrine of reasonable expectations is usually applied only where the court finds the policy language ambiguousalthough there are exceptions. See 2 COUCH ON INSURANCE 3d § 22:11, nn. 89 & 90.
We conclude that the trial court in the State Farm case erred by effectually applying this new doctrine of reasonable expectations when it concluded that State Farm's broad definition of pollution had "stretch[ed] the definition of `pollutant' beyond what a reasonable person placed in the position of the insured would have understood the word to mean." This was error for two reasons. The first and foremost is, as we have just shown, that the Florida Supreme Court has not adopted the doctrine of reasonable expectations; instead the rule here is that ambiguities result in coverage.
Second, there is no ambiguity in these exclusions and thus no occasion, even if the doctrine were adopted in Florida, for any analysis of the subjective expectations of the insured. In other words, applying the fundamental principle under Florida law that the contractual language must be enforced if it is clear, an ambiguity must therefore first be shown to exist before the court can consider the question of the reasonable expectations of the insured.[4]
In these policies, the term pollution is clearly defined as the dispersal of any chemical irritant. In the Florida Farm Bureau case, however, the trial judge read the term pollution as limited to substances generally toxic but not to include substances toxic only under special circumstances.[5] The judge erroneously concluded that an ambiguity arose from the policy's categorical exclusion of coverage for pollution-based claims where, as he reasoned, the common understanding of the term pollution limits *403 the term to claims arising from some special or idiosyncratic use of a substance that is ordinarily not toxic.
When a policy clearly defines a term, however, it is error for the court to engage in further construction of the defined term under the rule of plain and ordinary meaning. The purpose of defining a contractual term is to make clear that the parties intend something in addition to the plain, ordinary meaning of the defined term. Hence, by finding an ambiguity in the general toxicity versus special toxicity rationale applied, the trial court has failed to give effect to the clear meaning of the actual exclusion defined in the policy. The court's construction has effectually created a limitation on the breadth of the exclusion and added a coverage that the insurer had clearly excluded.
As a second rationale for its finding of an ambiguity, the trial court in the Florida Farm Bureau case observed that "the definition of pollution is `embedded' in an exclusion which primarily addresses environmental pollution-related activities." From that premise, the court decided that "an `absolute pollution exclusion ... is not triggered by nonenvironmental, routine accidents.'" We disagree.
To repeat ourselves, the express language of this exclusion is to exclude all pollution bodily injury claims from coverage. The definition of pollution drafted by the underwriters in these cases was obviously intended to be both broad and comprehensive. Indeed, the trial courts themselves tacitly recognized that the text seeks to exclude the whole of the class. The whole necessarily comprehends its parts.
The fact that these insurers may have been predominately motivated by the prospect of claims from a "Love Canal" to exclude the whole class of pollution claims cannot serve as a basis for judges to infer an intent, despite policy language, to cover less catastrophic losses. While the exclusion certainly entails "environmental pollution-related activities,"[6] there is not a single word in the text that suggests an intent to cover claims arising from more isolated incidents of pollution. We can find no ambiguity from the placement of the definition in a text that is at once broad enough to exclude both environmental pollution and also the kinds of acts involved here affecting only two persons or other persons in the same building. Under the policy definition used in these cases, pollution is pollution, even if it injures only a few bystanders in the same general area.
In short, the decisions of the trial courts are in violation of the principle forbidding courts "to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d at 1248. They have "rewrit[ten] a contract of insurance [to] extend the coverage afforded beyond that plainly set forth in the insurance contract." U.S. Fire Ins. Co. v. Morejon, 338 So.2d at 225.
To return to the question we posed earlier, we answer that the CGL pollution exclusion does not become ambiguous when the "sudden and accidental" exception has been removed. As we have already said, the obvious meaning of the words in these categorical exclusions is that no pollution claims will be covered. It is not reasonably possible to misunderstand the meaning of "no". The plain intention of the exclusion is that if the insured desires an additional coverage for bodily injury claims resulting from any form of pollution, the insured must simply pay the premium for it.
Nevertheless, we also recognize that CGL policies are widely and generally used in Florida. We perceive, as demonstrated by the two summary judgments reviewed in this decision, that there is an opinion in the bench and bar that these categorical exclusions of pollution coverage are ambiguous. Therefore, to enable the supreme court itself to decide the issue of ambiguity and consider the doctrine of reasonable expectations, we certify the following question to the court:

*404 Where an ambiguity is shown to exist in a CGL policy, is the court limited to resolving the ambiguity in favor of coverage, or may the court apply the doctrine of reasonable expectations of the insured to resolve ambiguities in CGL policies?

REVERSED FOR JUDGMENTS ACCORDINGLY.
GUNTHER, C.J., and GLICKSTEIN, STEVENSON and SHAHOOD, JJ., concur.
STONE, J., concurs in part and dissents in part with opinion in which DELL, J., concurs.
WARNER, J., concurs specially with opinion.
KLEIN, J., concurs in part and dissents in part with opinion, in which POLEN and PARIENTE, JJ., concur.
GROSS, J., recused.
STONE, Judge, concurring in part and dissenting in part.
I would affirm the order granting summary judgment in favor of Deni Associates because the terms of the State Farm policy are ambiguous. As to the Fogg appeal, I concur in result only.
The insurance company has the burden of proving that coverage is excluded under the exclusionary clause. B & S Assocs., Inc. v. Indemnity Casualty & Property, Ltd., 641 So.2d 436 (Fla. 4th DCA 1994). Here, State Farm has not met that burden. Ambiguities in insurance policies are strictly construed against the insurer. E.g., State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986); Sterling v. City of West Palm Beach, 595 So.2d 284, 285 (Fla. 4th DCA 1992). Insurance policies should be construed when possible in favor of providing coverage. Sterling, 595 So.2d at 285. Further, exclusionary clauses are construed against the insurer even more strictly than are coverage clauses. Triano v. State Farm Mut. Auto. Ins. Co., 565 So.2d 748 (Fla. 3d DCA 1990).
The pollution clause in the Deni policy was apparently drafted in an effort to remove a common exception in pollution exclusion clauses previously in use covering damages caused by the "sudden and accidental" release of pollutants. See generally Vantage Dev. Corp., Inc. v. American Env't Technologies Corp., 251 N.J.Super. 516, 525, 598 A.2d 948, 953 (Law Div.1991). Those exceptions to the pollution exclusion led to a great deal of litigation, usually focusing on the word "sudden." See New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1195 nn. 60-61 (3d Cir.1991). However, removing the "sudden and accidental" exception to the pollution exclusions may create a new ambiguity with respect to coverage for accidents such as occurred in Deni, where there is no additional language clarifying that such incidents are not covered.
I recognize that courts in some jurisdictions have found pollution exclusion clauses similar to that used here to be clear and unambiguous. However, courts in other jurisdictions have enforced coverage notwithstanding broad exclusionary terms where the court concludes that a reasonable insured ordinarily would not recognize the breadth of the exclusion because the policy is not sufficiently explicit. See, e.g., A-1 Sandblasting & Steamcleaning Co. v. Baiden, 53 Or.App. 890, 632 P.2d 1377 (1981), aff'd, 293 Or. 17, 643 P.2d 1260 (1982). In A-1 Sandblasting, the court reversed summary judgment for the insurers based on the question of whether incidental overspray damage to some vehicles passing under a bridge the insured was painting was within the definition of the term pollutant. 53 Or.App. at 896, 632 P.2d at 1380. Such is the case here. See also Westchester Fire Ins. Co. v. City of Pittsburg, Kan., 768 F.Supp. 1463 (D.Kan.1991), reconsideration denied, 794 F.Supp. 353 (D.Kan. 1992), aff'd sub nom. Pennsylvania Nat. Mut. Casualty Ins. Co. v. City of Pittsburg, Kan., 987 F.2d 1516 (10th Cir.1993); West Am. Ins., Co. v. Tufco Flooring E., Inc., 104 N.C.App. 312, 409 S.E.2d 692 (1991), rev. denied, 332 N.C. 479, 420 S.E.2d 826 (1992). Compare Vantage Dev. Corp., 251 N.J.Super. at 521, 598 A.2d at 950 (policy contained express warning of lack of coverage).
First, I would note that the term "pollution" is generally understood as referring to a more widespread exposure of the environment *405 to a polluting substance than occurred here. In this case, the policy in question does not sufficiently alert the insured that this is not the case. See Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34 (2d Cir.1995) (reversing dismissal of insured's claims against insurance company, determining pollution exclusion clause applied to environmental pollution, but not to personal injury arising out of the insured's tenants inhaling carbon monoxide coming from faulty heating and ventilation system); Miano v. Hehn, 206 A.D.2d 957, 614 N.Y.S.2d 829 (1994) (determining insurer obligated to defend insured, sued by tenants for damage caused by insured's employee pulling asbestos-containing insulation from pipes, noting absolute pollution exclusion has generally been interpreted as applying to environmental pollution). See also A-1 Sandblasting; Westchester Fire Ins. Co.; West Am. Ins. Co.
In a claim involving damage caused by a sewage backup of raw waste, Florida's Second District recently affirmed a trial court determination that a homeowner's policy was ambiguous despite a broadly worded pollution and water damage exclusion where the exclusion did not contain additional language that could have been employed to clarify unambiguously that the clause would exclude coverage for such damage. There, the court noted that "the average homeowner's examination of the insurance contract would not reveal the applicability of these exclusions to this type of disaster." Florida Farm Bureau Ins. Co. v. Birge, 659 So.2d 310 (Fla. 2d DCA 1994), rev. denied, 659 So.2d 271 (Fla. 1995).
The majority correctly recognizes that insurance policy interpretation cannot turn on the subjective interpretation of the insured. However, such reasoning is not necessary to support a conclusion that the policy exclusion in Deni is ambiguous when read from the perspective of a reasonable insured. In any event, construing a policy provision in accordance with the reasonable expectations of an insured is not a concept entirely foreign to this state. Cf. Florida Farm Bureau Casualty Co. v. Hurtado, 587 So.2d 1314, 1320 (Fla.1991) (Barkett, J., concurring in part and dissenting in part). I reject the notions expressed by the majority opinion that finding an ambiguity in this policy would involve torturing clear meaning into uncertainty and give defined terms a different meaning deemed "more socially responsible or desirable to the insured." To the contrary, the ambiguity here is recognizable by applying the traditional rule that the terms of a policy exclusion should be "construed to promote a reasonable, practical, and sensible interpretation." United States Fire Ins. Co. v. Pruess, 394 So.2d 468, 470 (Fla. 4th DCA 1981). Even if recognizing an ambiguity here can be viewed as applying some form of "reasonable expectations" doctrine, I discern no reason why Florida courts should not at least recognize aspects of this concept for the purpose of determining whether an insurance policy provision is ambiguous when viewed from the perspective of a reasonable insured. Some form of this doctrine apparently has been accepted in many states. I also note that there is no basis in this record from which to conclude that additional coverage was otherwise reasonably available to Deni simply by paying a premium for it.
In Minerva Enterprises, Inc. v. Bituminous Casualty Corp., 312 Ark. 128, 851 S.W.2d 403 (1993), the court reversed summary judgment for the insurer and remanded, determining that the broad pollution exclusion was ambiguous as to whether it applied to damage to a tenant's mobile home when flooded by a backed-up septic system. It was decided that on remand, parol evidence would be admissible on the meaning of the term "waste" used in the exclusion. The Minerva court concluded that the term was ambiguous because such clauses were meant to cover the activities of "persistent" or "active" polluters, not of those who may incidentally cause some isolated unexpected damage by something that could be classified as a contaminant or waste. 312 Ark. at 130, 851 S.W.2d at 404.
Although the meaning of the exclusion in question may be clear to the majority, it is not to me, nor apparently was it clear to the trial court. I would conclude that the standard of a reasonable insured, or a common sense standard, is as much in keeping with *406 existing law as the rule imposed by the majority, given the incalculable number of circumstances that might arise of everyday activity "gone awry" in which a reasonable insured would expect coverage for a substance leaking out of commonly used equipment or appliances not ordinarily considered to be a pollution threat. Cf. Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037 (7th Cir.1992); Minerva Enters. The court in Pipefitters Welfare Educational Fund, while enforcing the exclusion under the facts of that case, recognized that because the possibilities of application of terminology such as "irritant" and "contaminant" is boundless (potentially applying to absurd applications), courts should take a common sense approach to determining the scope of even broadly worded pollution exclusion clauses, where a reasonable insured would not ordinarily expect certain incidents to be characterized as falling within the exclusionary language.
Why would not a reasonable insured expect a more explicit warning from the insurer? A more explicit warning is particularly appropriate where coverage was previously afforded under the exclusionary language recently in vogue and the insurer has redefined otherwise commonly understood provisions. Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700 (Fla.1993), is inapposite, as there the relevant issue was simply whether a "sudden and accidental" exception to the pollution exclusion covered damage for pollution that had occurred gradually over several years. Therefore, I would conclude that the Deni exclusionary clause is ambiguous and affirm.
Although I concur in certifying a question to the supreme court, I would limit the query by wording it more narrowly to the circumstances of this case.
DELL, J., concurs.
WARNER, Judge, concurring specially.
I concur in the majority opinion because it adheres to supreme court precedent, and, as this court found out in Hoffman v. Jones, 280 So.2d 431 (Fla.1973), it is not the place of the appellate courts to change the settled law of Florida.
I must admit that the reasonable expectation test has appeal in this case. I would caution, however, that in other contexts, it may lead to lack of coverage which might otherwise be available under the plain meaning construction, which has as a concomitant principle that ambiguities are interpreted liberally in favor of the insured. It would seem to me that an insurer could argue successfully the reasonable expectation test to exclude coverage in circumstances where it has heretofore been construed in favor of the insured. See, e.g., State Farm Fire & Casualty Co. v. Polgar, 551 So.2d 549 (Fla. 4th DCA 1989).
KLEIN, Judge, concurring in part and dissenting in part.
If the insurers had not, as they refined these exclusions over the years, continued to use the word "pollutant," but instead made it clear that they intended to exclude coverage for ordinary accidents which no one would think of as causing pollution, we would not have had all of this litigation. The pollution exclusion in the State Farm policy provided:
We do not insure for loss either consisting of, or directly and immediately caused by one or more of the following.
* * * * * *
e. the presence, release, discharge or dispersal of pollutants, meaning any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste, except as provided in the Pollutant Clean Up and Removal Extension of Coverage.
I, quite frankly, do not think that even State Farm intended this exclusion to leave its insured without coverage for the type of accident which occurred here. These insurance policies are not called comprehensive general liability policies for nothing. If they were intended to exclude liability for all of the types of claims which the majority would exclude, there would be no reasonable certainty as to coverage, and insureds would only discover their lack of coverage as everyday mishaps occurred.
*407 In Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir.1992), the court stated:
The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Westchester Fire Ins. Co. v. City of Pittsburg, 768 F.Supp. 1463, 1470 (D.Kan.1991). Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.
After citing cases in which the exclusion was held not to apply where an apartment dweller ate lead paint, or a worker breathed asbestos particles during removal of insulation, the court went on to state:
The bond that links these cases is plain. All involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry.
Pipefitters, 976 F.2d at 1044.
Some of the courts in other jurisdictions faced with the issue have found these exclusions ambiguous, not facially, but rather as applied to the facts. See Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34 (2d Cir.1995) (relying on New York state court cases finding ambiguity in pollution exclusions, and holding such an exclusion ambiguous as applied to claims for injury by carbon monoxide poisoning in an apartment building); Island Assoc., Inc. v. Eric Group, Inc., 894 F.Supp. 200 (W.D.Pa.1995) (holding the pollution exclusion ambiguous when applied to the facts of workers removing asbestos floor tile mastic and being injured by fumes); West Am. Ins. Co. v. Tufco Flooring E., Inc., 104 N.C.App. 312, 409 S.E.2d 692 (1991), rev. denied, 332 N.C. 479, 420 S.E.2d 826 (1992) (holding the pollution exclusion ambiguous as applied to claim); Atlantic Mut. Ins. Co. v. McFadden, 413 Mass. 90, 595 N.E.2d 762 (1992) (holding that to the extent that exclusion can be read to imply that lead in paint is a "pollutant" it is ambiguous).
The above decisions, which hold the exclusions to be ambiguous when applied to the facts did not label that type of ambiguity as a latent ambiguity. Nevertheless, that is what it would be, as defined in Bunnell Medical Clinic, P.A. v. Barrera, 419 So.2d 681, 683 (Fla. 5th DCA 1982):
A latent ambiguity has been defined as one where the language in a contract is clear and intelligible and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two possible meanings. Hunt v. First Nat'l Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA 1980); Drisdom v. Guarantee Trust Life Ins. Co., 371 So.2d 690 (Fla. 3d DCA 1979).
In Drisdom the third district applied the latent ambiguity doctrine to conclude that the word "school," in a group accident insurance policy, created a latent ambiguity.
As Judge Stone's dissent points out, a number of courts in other jurisdictions have found these exclusions ambiguous on their face. I would not do that. I do not think that there is any ambiguity in regard to the spraying case, because I believe the exclusion clearly contemplates that activity.
I must admit, however, that the widespread disagreement in the courts as to what these exclusions mean has influenced my thinking on whether they are always clear and unambiguous, as the majority holds, regardless of the facts. Although I had not intended to express that thought, I have discovered that disagreement by courts has been recognized as a basis for finding an ambiguity. As Judge Letts put it in Security Insurance Co. of Hartford v. Investors Diversified Limited, Inc., 407 So.2d 314, 316 (Fla. 4th DCA 1981):
The insurance company contends that the language is not ambiguous, but we cannot *408 agree and offer as proof of that pudding the fact that the Supreme Court of California and the Fifth Circuit in New Orleans have arrived at opposite conclusions from a study of essentially the same language.
As another court observed, in deciding whether an insurance exclusion was ambiguous:
If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it.
Alvis v. Mutual Benefit Health & Accident Ass'n, 201 Tenn. 198, 297 S.W.2d 643, 645-6 (1956); see also, Stroehmann v. Mutual Life Ins. Co. of New York, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732 (1937); see also, Annotation, Division of Opinion Among Judges on Same Court or Among Other Courts or Jurisdictions Considering Same Question, as Evidence that Particular Clause of Insurance Policy is Ambiguous, 4 A.L.R.4th 1253 (1981).
I would follow the courts in other jurisdictions which have found that pollution exclusions can be ambiguous when applied to the facts. I would hold the exclusion ambiguous in the case involving the blue print machine, construe the ambiguity against the insurer, and find coverage. I agree with the majority that there is no coverage in the spraying case.
POLEN and PARIENTE, JJ., concur.
NOTES
[1] Westchester Fire Ins. Co. v. City of Pittsburg, 768 F.Supp. 1463 (D.Kan.1991).
[2] The cases relied on in COUCH do not address a third alternative: i.e., pay an increased premium for the excluded coverage.
[3] The single Florida case cited in footnote 87 actually applied the traditional rule of reasonable construction of language used, not the new doctrine of reasonable expectations. 2 COUCH ON INSURANCE 3d, § 22.11, n. 87; see United States Fire Ins. Co. v. Pruess, 394 So.2d 468, 470 (Fla. 4th DCA 1981) ("It is a general rule of law that terms of an insurance policy must be construed to promote a reasonable, practical and sensible interpretation consistent with the intent of the parties.").
[4] It appears to us that ammonia is widely known to be a chemical irritant and thus an agent causing pollution. Hence one might argue that, as a matter of law, no insured could reasonably expect otherwise. If the doctrine of reasonable expectations of the insured were adopted in Florida, however, we would prefer that the trial judge address that issue in the first instance.
[5] As the trial judge stated it, the pollution exclusion here:

"contemplate[d] a substance particularly harmful or toxic to persons or the environment generally, and not merely a substance harmful to persons or the environment due to special circumstances."
In other words, the trial judge thought the exclusion was limited to substances generally toxic but not to substances which become toxic only under special circumstances.
[6] By the term "environmental pollution-related activities," we understand the court to refer to pervasive and extensive pollution that affects, e.g., more than 2 bystanders or other tenants in the same building.